1999-NMCA-134

991 P.2d 507

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Kelvin Dewayne ROSS, Defendant–Appellant.**

**No. 19,099.**

Court of Appeals of New Mexico.

. Aug. 19, 1999.

Certiorari Granted, No. 25,951, Oct. 15, 1999.

true

Patricia A. Madrid, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellees.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, for Appellants.

## OPINION

ARMIJO, Judge.

{1} The formal opinion filed on April 9, 1999, is hereby withdrawn and the following opinion is substituted. The motion for rehearing filed by Defendant is denied.

{2} Defendant appeals his convictions stemming from his participation in a burglary in Alamogordo, New Mexico, in the summer of 1995. As the sole ground for his appeal, Defendant asserts that his speedy trial right was violated by the passage of twenty-one months between the time of his arrest and trial. We affirm Defendant's convictions.

## I. FACTUAL HISTORY

{3} For clarity and to aid our analysis, we relate the underlying facts and procedural history in detail, paying particular attention to relevant dates.

{4} Defendant was convicted of residential burglary, conspiracy to commit residential burglary, larceny, aggravated residential burglary, unlawful taking of a motor vehicle, contributing to the delinquency of a minor, and possession of a firearm by a felon (all felonies), as well as resisting, evading, or obstructing an officer (a misdemeanor). These convictions relate to an early morning burglary of the home of Sid and Barbara Anderson in Alamogordo on July 20, 1995. Two other individuals participated in the burglary. Among the items stolen were a gold Lincoln Continental Mark IV, a red Jeep Cherokee, a VCR, several tools, and two firearms.

{5} Later that morning, Officer Ken Johnson of the Alamogordo Police Department stopped Defendant on a routine traffic matter. The stop was made on a residential street. Officer Johnson was unaware of the burglary of the Anderson's home, but stopped Defendant in what proved to be the Anderson's stolen Lincoln Continental. During questioning, Defendant indicated that he did not have his driver's license. He stated that the house in front of which he and Officer Johnson were stopped belonged to him (Defendant) and, with the officer's permission, he would retrieve his license from inside the home. In fact, the house did not belong to Defendant, but belonged to Beatrice Ross (who is apparently not related to Defendant) and her son, Roan Larkin. When Defendant failed to return from the

house, Officer Johnson began to look for him and observed Defendant running from the area. The officer gave chase but was unable to catch Defendant.

{6} Still later that morning, the Alamogordo Police Department began investigating the burglary. The detective heading the investigation issued an "alert" to officers in the area, suggesting that the burglary suspects might be headed to the El Paso, Texas, area in the red Jeep Cherokee and a pickup truck. An El Paso police officer who heard the alert stopped the pickup truck and later the Jeep Cherokee. The officer arrested Defendant, who was a passenger in the pickup truck, along with the others in the two vehicles.

## II. PROCEDURAL HISTORY

{7} On August 14, 1995, the State charged Defendant, by criminal information, with receiving or transferring a stolen vehicle (the Lincoln Continental). That criminal information became the basis of Cause Number CR–95–286 in the Twelfth Judicial District Court, Otero County, New Mexico, for which Defendant was tried and convicted in February 1996. Defendant did not appeal that conviction and that case is not part of the present appeal. However, on August 24, 1995, the State, after conducting additional investigation, filed a criminal complaint against Defendant in Otero County Magistrate Court, Cause Number 15–02–96–0822F. This charging document apparently erroneously included a charge of unlawfully taking the Lincoln Continental, along with the other charges for which Defendant was ultimately tried and convicted in the present case.

{8} For reasons that are not clear from the record, there was no activity in this cause from August 24, 1995, until March 27, 1996, when a magistrate judge appointed counsel for Defendant. The magistrate court then scheduled a preliminary hearing in the case for April 26, 1996, but continued the hearing on Defendant's unopposed motion. The magistrate court rescheduled the preliminary hearing for June 13, 1996, but again continued it, this time on the State's motion. The State alleged that Defendant was being housed at that time in Texas, in conjunction with his February 1996 conviction, and was

therefore unavailable on the scheduled hearing date. There appears to have been some confusion as to where Defendant was being jailed, insofar as the magistrate judge sought to have Defendant transported from the prison in Grants, New Mexico.

{9} The preliminary hearing in Cause 15–02–96–0822F was finally held on September 19, 20, and 21, 1996. Thereafter, the State filed a criminal information in Otero County District Court. It was assigned cause number CR–96–394 (the present case) on October 4, 1996. On October 16, 1996, Defendant was bound over for trial on nine counts. (The charge relating to the theft of the Lincoln Continental, which had erroneously been included in the complaint and for which Defendant had previously been tried and convicted, was not among the counts charged in the information.) Defendant waived arraignment and entered a plea of not guilty on October 25, 1996. On January 9, 1997, Defendant filed a motion to dismiss, alleging that his right to a speedy trial had been violated and suggesting that his due process rights had been violated. The motion was argued before Judge Frank Wilson on March 7, 1997. Judge Wilson denied the motion. Defendant renewed his motion at the commencement of trial on April 21, 1997. Judge Wilson again ruled against Defendant. A jury convicted Defendant of eight of the original nine counts in the information, the court having merged two separate counts of larceny that had appeared in the information. As noted, the sole issue on appeal is whether Defendant's speedy trial right was violated by the passage of twenty-one months between his original arrest on July 20, 1995 and his trial on April 21, 1997.

## III. DISCUSSION

{10} The right to a speedy trial "prevents lengthy incarceration prior to trial, reduce[s] impaired liberty while an accused is released on bail, and shortens the disruption of life caused by pending and unresolved criminal charges." *State v. Jacquez*, 119 N.M. 127, 130, 888 P.2d 1009, 1012 (Ct.App. 1994). To determine whether a defendant's speedy trial right has been violated, a court must engage in the sensitive balancing of

four factors: (1) length of delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant. *See Salandre v. State*, 111 N.M. 422, 425, 806 P.2d 562, 565 (1991) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). "These four factors ... have no talismanic qualities; no one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990). In order to calculate the length of delay for purposes of analysis, a court must first determine when the defendant's speedy trial right attached, that is, when the right was implicated.

■ {11} "The right to a speedy trial is implicated when the putative defendant becomes an 'accused.'" *Salandre*, 111 N.M. at 425, 806 P.2d at 565 (citing *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)). More concretely, "indictment, or the actual restraints of arrest *and* holding for charges, implicates the speedy trial guarantee." *Id.* at 426, 806 P.2d at 566 (footnote omitted); *cf. State v. Sanchez*, 108 N.M. 206, 206, 769 P.2d 1297, 1297 (Ct.App.1989) ("The ... speedy trial right is triggered by a filing of a formal indictment or information or arrest and holding to answer.").

■ {12} We conclude that, with respect to the felony charges, Defendant's speedy trial right attached when the State filed the criminal information on October 4, 1996, and not when he was arrested for or charged by information with receiving the stolen Lincoln Continental. *Cf. State v. Haar*, 110 N.M. 517, 522, 797 P.2d 306, 311 (Ct.App.1990) (holding that the defendant's speedy trial right attached upon the filing of the indictment and not upon his arrest for other charges, even though the seizure of a handgun incident to the arrest made him a suspect in the subsequent prosecution). Although Defendant contends that he was arrested on the charges in this case on July 20, 1995, the evidence conflicted on this point. *See State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978) (noting appellate court ought not disturb fact finder's resolution of fact).

### Attachment of the Right for the Felony Charges

{13} It appears from the record that Defendant's arrest on the day of the burglary was not for the charges in the present case, but was instead for the charge of receiving or transferring a stolen vehicle, a charge for which Defendant was tried and convicted in February 1996. Further, the record discloses that Defendant was in custody from the time of his arrest on July 20, 1995, until the time of his trial in the present case, April 21, 1997. However, none of the time he spent in custody during that time was for the charges in this case. The State asserted, and Defendant did not rebut, the following reasons for Defendant's incarceration: (1) from the date of Defendant's arrest for the receipt or transfer of the stolen Lincoln Continental until August 31, 1995, Defendant was in custody pursuant to that arrest; (2) on August 31, 1995, the State revoked Defendant's parole and incarcerated Defendant in the Department of Corrections system; (3) the State returned Defendant to the Otero County correctional system on January 10, 1996, at which time Defendant was apparently incarcerated for another parole violation; (4) Defendant was tried and convicted for the receipt or transfer of the stolen Lincoln Continental in February 1996 and was subsequently sentenced for that conviction, thereafter serving time for that crime; and (5) he was still serving time for that conviction when he was tried for the charges in the present case.

■ {14} The filing of the complaint in magistrate court was insufficient to trigger Defendant's speedy trial right for the felony charges. The New Mexico Constitution, Article II, Section 14, requires the State to file an indictment or information before commencing a felony prosecution: "No person shall be held to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general or their deputies...." In either case, the filing of felony charges must be preceded by a probable cause determination—either a preliminary hearing

(or waiver thereof) for an information or a grand jury proceeding for an indictment, *see* Rule 5–201(C), (D) NMRA 1999; *see also State v. Sanchez,* 101 N.M. 509, 511, 684 P.2d 1174, 1176 (Ct.App.1984). These authorities suggest that the charging document upon which a felony prosecution can proceed requires a certain, heightened formality.

{15} Our conclusion is strengthened by the fact that the information/indictment requirement is a matter of jurisdiction; that is, until the State files an information or indictment, the district court is without jurisdiction to try the defendant. *See State v. Chacon,* 62 N.M. 291, 293–94, 309 P.2d 230, 232 (1957); *State v. Smallwood,* 94 N.M. 225, 230 608 P.2d 537, 542 (Ct.App.1980). Because Defendant was not arrested and held to answer for the charges in the present case, nor were his felonies charged by information until just under six months prior to his trial, the delay was not presumptively prejudicial such that inquiry into the remaining speedy trial factors is necessary. Defendant's right to a speedy trial on the felony charges was not violated. *See Salandre,* 111 N.M. at 428, 806 P.2d at 568; *Jacquez,* 119 N.M. at 131, 888 P.2d at 1013 (holding five-month delay between attachment of speedy trial right and trial insufficient to establish presumptively prejudicial delay, thus making unnecessary complete *Barker* balancing). To the extent that Defendant argues that the filing of the complaint in the magistrate court was sufficiently formal to trigger his speedy trial rights, we note that he cites no authority for this proposition. *See In re the Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that issues raised in appellate briefs which are unsupported by cited authority will not be reviewed on appeal).

{16} Finally, we emphasize that the foregoing analysis applies only to the felony counts. We do not reach the question of the violation of the speedy trial right as it applies to the misdemeanor count that is joined with a number of felony counts because Defendant failed to make a separate argument about the misdemeanor count. *See id.* He also failed to argue a violation of the six-month rule as it relates to the misdemeanor conviction, either on appeal or apparently below.

## IV. CONCLUSION

{17} For the foregoing reasons, we hold that Defendant's right to a speedy trial on the felony charges was not implicated until the State filed the information in district court. The time between attachment of the right and trial was just under six months—a delay insufficient to require inquiry into the remaining *Barker* factors and therefore insufficient to give rise to a violation of Defendant's speedy trial right. We therefore affirm Defendant's convictions.

{18} **IT IS SO ORDERED.**

PICKARD, C.J., and WECHSLER, J., concur.