This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **NO. 28,405**

**FERNANDO MURIEL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Judge.**

In this appeal, Defendant appeals on two grounds. First we consider whether the actions of the investigating officers elevated an investigatory detention to a de facto arrest. Because we conclude that the officers acted reasonably to ensure their own safety, we affirm the district court's denial of Defendant's motion to suppress the evidence that was discovered during the investigation. As to Defendant's second claim of error, we hold that there was no violation of Defendant's right to a speedy trial and affirm on that issue, too.

**I.     BACKGROUND**

On February 5, 2006, security guards at the Sunland Park Casino notified the police that they had observed two men in the casino with a concealed weapon. NMSA 1978, Section 30-7-3(A) (1999) (amended 2007), makes it unlawful to carry "a firearm in an establishment licensed to dispense alcoholic beverages." During the time it took for two police officers to arrive at the casino, Defendant and his brother left the casino and got into a car. The security guards directed the officers to that vehicle, and the officers engaged their emergency lights and stopped the car. Drawing their weapons, the officers ordered the two men out of the car and onto the ground. Defendant exited from the passenger side of the vehicle and, as he bent over to lie down, one of the officers saw a bulge in Defendant's shirt. After Defendant was on the ground, the officers discovered a knife on Defendant's belt, as well as cocaine

lying on the pavement between Defendant and the passenger side door of the vehicle.

On February 6, 2006, Defendant was charged in magistrate court with one count of possession of a controlled substance and one count of unlawful carrying of a concealed weapon. On February 24, 2006, the State filed identical charges in district court and obtained a grand jury indictment on June 22, 2006. The magistrate court charges were dismissed on June 23, 2006. After a period of delay, which we will detail in subsequent paragraphs, Defendant was arraigned on January 16, 2007. The case proceeded toward a May 2, 2007 trial date. On April 27, 2007, Defendant filed a motion to suppress the drug evidence, which the district court denied.

The case was reset for trial on July 2, 2007, and again for December 11, 2007. On November 30, 2007, Defendant filed a motion to dismiss, arguing that the pretrial delay violated his right to a speedy trial. The district court denied Defendant's motion. On December 11, 2007, Defendant entered into a conditional plea agreement.

**II.    DISCUSSION**

Defendant makes two arguments on appeal:  (1) the district court improperly denied the motion to suppress the evidence of cocaine and (2) the district court improperly denied the motion to dismiss for speedy trial violations. We address each argument in turn.

## A. Motion to Suppress

On appeal, Defendant argues that the officers' actions were so unreasonable as to elevate the investigatory stop into a de facto arrest and that because the officers lacked probable cause to arrest, the evidence gained as a result of their actions should have been suppressed. The district court, in response to the same argument, denied Defendant's motion to suppress because it found that the officers had reasonable suspicion that Defendant had been carrying a firearm in a liquor establishment and that the officers were reasonably concerned for their safety. "When reviewing a ruling on a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts[,] which is subject to de novo review." *State v. Pacheco*, 2008-NMCA-131, ¶ 3, 145 N.M. 40, 193 P.3d 587 (alteration in original) (internal quotation marks and citation omitted).

"When a detention exceeds the boundaries of a permissible investigatory stop, it becomes a de facto arrest requiring probable cause." *State v. Flores*, 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038. To determine whether probable cause was required by a particular set of circumstances, we evaluate three factors: the length of the detention, the place of detention, and the restriction on the defendant's freedom of movement. *Id.* "The ultimate question of whether an arrest was made is whether

4

the officers' actions . . . were reasonable under the circumstances." *State v. Lovato*, 112 N.M. 517, 522, 817 P.2d 251, 256 (Ct. App. 1991).

Defendant does not appear to argue that the length or place of his detention were unreasonable. Defendant focuses on the final factor and argues that the officers' drawn weapons, together with their orders for Defendant to exit the vehicle and lie on the pavement, "exceeded the force and degree of restraint necessary in an investigatory detention under the circumstances." The district court appears to have found the force exerted was reasonable under the circumstances, and we agree. When the officers arrived on the scene, they had reliable information that an occupant of the car was possibly in possession of a concealed weapon. Further, the casino security guards—the sources of the officers' information—identified Defendant as the suspect. Officers approaching occupied vehicles are faced with heightened danger and uncertainty. *See id.* (noting that the United States Supreme Court has "recognized the inordinate risks police take when they approach cars with persons seated in them[] and approved the practice of requiring the persons to get out of the car and be subject to a protective frisk even in the absence of individualized suspicion"). In the present case, not only were the officers approaching an occupied car, but their investigation was based on a tip that at least one of the occupants was carrying a concealed weapon.

Defendant contends that a frisk or a pat down would have been the only

acceptable level of force. Such a limitation, however, under these circumstances, would have required the officers to approach the car that they suspected contained at least one armed person without the assurance that the person was unable to reach any weapons. Thus, we are satisfied that "the level of intrusion under these circumstances was not inappropriate in view of the level of danger the officers reasonably could assume to exist." *Id.*

Defendant also appears to argue that the level of force employed by the officers was excessive because they were investigating whether Section 30-7-3 had been broken in the past. Specifically, Defendant contends that because he was no longer in the casino at the time that the officers stopped him, he could not have been violating the law against carrying a concealed firearm in a liquor establishment. As a result, Defendant posits that the officers were justified in investigating whether Defendant had a firearm, but that "they were not justified in using the excessive force they employed." We are unpersuaded. There is no dispute that based on the facts known to the officers, they had reasonable suspicion to believe that at least one of the occupants of the vehicle was armed. *See State v. Robbs*, 2006-NMCA-061, ¶ 26, 139 N.M. 569, 136 P.3d 570 ("[R]easonable suspicion can arise from wholly lawful conduct." (internal quotation marks and citation omitted)). As a result, as we have explained, the officers' actions in requiring the occupants to exit the vehicle and lie

on the ground were reasonable safety precautions.

In addition, Defendant attempts to distinguish the facts in the present case from those in *Lovato*. In *Lovato*, police officers received a dispatch regarding a drive-by shooting in the area, and the dispatch provided a description of the car. *Lovato*, 112 N.M. at 518, 817 P.2d at 252. When the officers saw a car matching the description, they stopped it and required the five occupants of the vehicle to lace their fingers behind their necks. *Id.* When backup arrived, each occupant of the vehicle was made to exit, one at a time, through the driver's door and walk backwards toward the rear of the car. *Id.* The officers had their guns drawn during this procedure. *Id.* This Court held that "the intrusive nature of the encounter did not, as a matter of law, turn the investigative stop in this case into an arrest." *Id.* at 522, 817 P.2d at 256.

By way of distinction, Defendant points out that in *Lovato*, the officers only frisked the suspects and did not force them to lie down on the pavement. In addition, Defendant observes that the officers in *Lovato* had information that weapons had actually been used. To address Defendant's arguments, we turn to the facts in *State v. Jimmy R.*, 1997-NMCA-107, 124 N.M. 45, 946 P.2d 648. In *Jimmy R.*, a police officer responded to a shots-fired call, and when he arrived in the area of the incident, he saw three juveniles. *Id.* ¶ 2. On seeing the officer, the juveniles started to walk away, but the officer "drew his gun, ordered the three to the ground, handcuffed them,

7

and searched them." *Id.* This Court held that "the officer had reasonable suspicion that the juveniles might have a gun or guns, based on the concerned citizen's report, and reasonably subjected them to a limited search to protect his own safety." *Id.* ¶ 3. Just as in *Jimmy R.*, the officers in the present case conducted a limited search in response to a reliable tip that at least one of the particular suspects was armed. Although shots had already been fired in both *Lovato* and *Jimmy R.*, police officers are not required to "await the glint of steel" before taking reasonable steps to ensure their own safety. *State v. Cobbs*, 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct. App. 1985) (internal quotation marks and citation omitted).

Because Defendant does not dispute that the officers had reasonable suspicion to initially stop the vehicle and because the officers' subsequent actions did not elevate the stop to a de facto arrest, we affirm the district court's denial of Defendant's motion to suppress. We now turn to Defendant's arguments regarding the violation of his right to a speedy trial.

**B.    Speedy Trial**

In order to determine whether a defendant's right to a speedy trial has been violated, we evaluate the length of the delay, the reasons for the delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant. *State v. Garza*, 2009-NMSC-038, ¶ 13, ___ N.M. ___, ___ P.3d ___ . "When reviewing a

8

district court's denial of a motion to dismiss on speedy trial grounds, we give deference to the court's factual findings. Weighing and balancing the . . . factors is a legal determination that we review de novo." *State v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254 (citation omitted). We begin by evaluating the length of the delay.

**1.	Length of Delay**

The length of the delay is a threshold determination, and a sufficiently lengthy delay triggers analysis of the four *Barker* factors. *Garza*, 2009-NMSC-038, ¶ 21. Our Supreme Court recently adjusted the standard for determining when a period of delay triggers the analysis. *Id.* ¶ 48. These new guidelines apply to those motions to dismiss that were filed after August 13, 2007. *Id.* ¶ 50. As Defendant's motion to dismiss was filed on November 30, 2007, we apply the new guidelines set forth in *Garza*. Accordingly, further inquiry is triggered by a delay of twelve months in simple case, a delay of fifteen months in a case of intermediate complexity, and a delay of eighteen months in a complex case. *Id.* ¶ 48.

Defendant argues that his case is simple and that the speedy trial right attached from the date of his arrest. Thus, by Defendant's calculation, the delay was twenty-two months, which exceeds the twelve-month standard for a simple case. The district court agreed with Defendant that this is a simple case and considered the delay to be

presumptively prejudicial at nine months—the threshold previously established for simple cases. *See Maddox*, 2008-NMSC-062, ¶ 9 (identifying the threshold presumptively prejudicial delay as nine months in simple cases). The State contends that, pursuant to *State v. Ross*, 1999-NMCA-134, ¶ 12, 128 N.M. 222, 991 P.2d 507, the right attached not on the date of arrest but on the date that felony charges were filed in the district court—February 24, 2006. As a result, the State maintains that the delay was twenty-one months and two weeks. We do not resolve these differences because the calculation of the delay requires the analysis of the remaining factors irrespective of whether the delay is twenty-one and a half or twenty-two months. *State v. Marquez*, 2001-NMCA-062, ¶ 10, 130 N.M. 651, 29 P.3d 1052 (noting that the distinction between sixteen and eighteen months is "without significance, in that either duration of time is significantly well beyond the presumptively prejudicial time period of nine months").

The State also presents an argument that Defendant improperly characterized this case as "extremely simple." Because the State does not challenge the district court's determination that the case is best categorized as simple for the purposes of triggering the remainder of the speedy trial analysis, we do not consider a finer distinction between "simple" and "extremely simple."

Length of delay is also one of the four *Barker* factors. In this case, the total

10

delay is between twenty-one and one-half and twenty-two months. For purposes of this opinion, we will round it off to twenty-two months. The time for resolution of this case extended ten months past the standard of twelve months—the time allowed for simple cases as set out in *Garza*. 2009-NMSC-038, ¶¶ 48, 50. Although we do not view this period as extraordinary, it is substantially more than the bare minimum described in *Garza*. *Id.* ¶ 24 (stating that "the greater the delay the more heavily it will potentially weigh against the [s]tate"). Accordingly, this factor weighs in Defendant's favor, but not heavily. *See id.*

**2.    Reasons for Delay**

In *Garza*, our Supreme Court summarized the three types of delay and the appropriate allocation of responsibility for that delay. 2009-NMSC-038, ¶¶ 25-27. "[O]fficial bad faith in causing delay will be weighed heavily against the government." *Id.* ¶ 25 (internal quotation marks and citation omitted). Negligent or administrative delay "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* ¶ 26 (internal quotation marks and citation omitted). Finally, valid reasons in causing a delay "serve to justify appropriate delay." *Id.* ¶ 27 (internal quotation marks and citation omitted). The time period during which a case is moving toward trial with customary promptness would

be included in this category and would be weighed neutrally between the parties. *Maddox*, 2008-NMSC-062, ¶ 27 (weighing the period in which a case proceeded "with customary promptness" against neither party); *see Garza*, 2009-NMSC-038, ¶ 27. In order to best analyze the reasons for the delays in the present case, we divide the twenty-two month delay into segments.

The first period of time is between Defendant's arrest on February 5, 2006, and the first scheduled arraignment on July 24, 2006. Although Defendant includes this time period in the calculation of the twenty-two month delay, he did not argue below nor does he argue on appeal how this period of time should be allocated. Instead, Defendant focuses on his premise that the State needed to physically bring him to court for arraignment, an argument we address later in this opinion.

The State contends that the activities during this period of time included plea negotiations and obtaining a grand jury indictment. According to the State, these activities were conducted with reasonable diligence and are valid reasons for delay. Although the State does not separate out the time from the indictment on June 22, 2006, to the first scheduled arraignment on July 24, 2006, the State points out that the setting scheduled for just seventeen days after indictment "could not have been much faster." In its letter decision, the district court observed that Defendant did not appear on July 24, but the court made no additional specific findings for this period of time.

Based on this record and the arguments of the parties, we conclude that from arrest to the first scheduled arraignment, this case was moving toward trial with customary promptness. Accordingly, we weigh this period of time neutrally between the parties. *See Maddox*, 2008-NMSC-062, ¶ 27.

On July 24, 2006, Defendant failed to appear in district court to plea to the charges in the grand jury indictment. The time from that date until he finally appeared on January 16, 2007, weighs against Defendant. During this period of slightly less than six months, the district court issued an additional criminal summons for a hearing on August 21, 2006, a bench warrant, an order to show cause and notice of forfeiture of bond, and an order entering default judgment on the bond. Each of these notices were sent to the address on file for Defendant. Defendant argues that the State had a responsibility to "bring [him] to court during this time period." Because it is clear that notice of the proceedings were sent to the address that Defendant acknowledges is his and because Defendant does not claim that he did not receive notice, we understand Defendant to be arguing that the State is required to physically bring a defendant into court for arraignment. We disagree.

Defendant's sole authority for this proposition is *Marquez*, 2001-NMCA-062. In *Marquez*, the defendant was indicted on May 7, 1998, and a warrant was issued for his arrest. *Id.* ¶ 15. The state, however, did not serve the warrant until July 3, 1998,

ten days before the scheduled arraignment. *Id.* This Court weighed the period between indictment and arraignment heavily against the State because "[t]he State has a constitutional duty to make a diligent, good-faith effort to bring [the d]efendant to trial" and, in that case, we "fail[ed] to ascertain that this duty was honored." *Id.* In *Marquez*, the state's bureaucratic indifference resulted in the delay.

We see no indifference to duty in the present case. After the State obtained a grand jury indictment on June 22, 2006, a criminal summons was immediately issued to Defendant's undisputed address, requiring Defendant to appear on July 10, 2006. Defendant did not appear. A second criminal summons was sent on July 11, 2006, to the same address, requiring Defendant to appear on July 24, 2006. Defendant failed to appear on that date as well, and the district court issued a bench warrant. A third criminal summons was issued on August 1, 2006, requiring Defendant's presence in court on August 21, 2006, and again, Defendant failed to appear. This record demonstrates repeated good-faith efforts by the State to secure Defendant's presence for arraignment. Thus, we need not conclude, as did the *Marquez* Court, that this period between indictment and arraignment weighs against the State. Defendant did not respond to numerous summonses and does not claim that he did not receive the documents. As a result, his arraignment was delayed by almost six months. Accordingly, this approximate six-month period of time weighs against Defendant.

14

Between January 16, 2007, and April 27, 2007, the case was again proceeding with customary promptness. As we have stated, such periods weigh against neither party. *See Maddox*, 2008-NMSC-062, ¶ 27. Trial had been set for May 2, 2007, and five days before trial, on April 27, 2007, Defendant filed a motion to suppress the cocaine found after the officers ordered him out of the car. The approximate two-month delay between that date and the date on which the motion was denied, June 21, 2007, is attributable to Defendant. *See State v. O'Neal*, 2009-NMCA-020, ¶ 21, 145 N.M. 604, 203 P.3d 135 (filed 2008) (weighing the time attributable to hearing the defendant's motions against the defendant).

Next, we consider the period between June 21, 2007, and the filing of Defendant's motion to dismiss on November 30, 2007. The State attributes this period of delay to scheduling difficulties, which we consider to be negligent delay and slightly weighed against the State. *See Garza*, 2009-NMSC-038, ¶ 26 (identifying negligence and overcrowded courts as "more neutral" reasons for delay and determining that such delay should be "weighted less heavily" than intentional delay) (internal quotation marks and citation omitted). Finally, the period between the November 30, 2007, filing of the motion to dismiss and Defendant's guilty plea on December 10, 2007, is attributable to Defendant's motion. Accordingly, this period weighs against Defendant. *See O'Neal*, 2009-NMCA-020, ¶ 21.

15

We summarize. Approximately eight months of delay are attributable to Defendant, five months weigh slightly against the State, and almost nine months weigh neutrally. Consequently, this factor weighs slightly against Defendant.

**3.     Assertion of the Right**

"[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Garza*, 2009-NMSC-038, ¶ 31 (internal quotation marks and citation omitted). In order to evaluate Defendant's assertion of the right, we consider the timing of the assertion as well as the manner in which the right was asserted. *Id.* ¶ 32. Defendants made only one assertion of the right to a speedy trial, which took the form of a motion to dismiss filed on November 30, 2007—eleven days before trial. No alternative motion for an immediate trial accompanied Defendant's motion to dismiss. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 35, 128 N.M. 382, 993 P.2d 96 (according little weight to the defendant's assertion of the right to a speedy trial because "most of the delay had already passed and he moved for dismissal rather than for a prompt trial").

In addition, Defendant appears to have acquiesced to the delay. *Cf. Garza*, 2009-NMSC-038, ¶ 34 (weighing this factor in the defendant's favor even though the assertion "was not especially vigorous" because the assertion was not mitigated "by

16

any apparent acquiescence to the delay"). Much of the delay—approximately eight months—is attributable to Defendant's failure to appear and to his last-minute filing of a motion to suppress. In addition, Defendant took no position on the State's two requests for extensions of time. Thus, the record indicates that Defendant did not assert the right to a speedy trial until over twenty-one months had passed and that he either caused the delay or permitted further delay without objection. Consequently, this factor weighs against Defendant. *See O'Neal*, 2009-NMCA-020, ¶ 22 ("[O]ne might reasonably conclude that [the d]efendant was either unconcerned about delay or expected to take advantage of the delay in which he had acquiesced.").

**4.     Prejudice**

We consider three types of prejudice resulting from pretrial delay:  oppressive pretrial incarceration, the anxiety and concern of the accused, and impairment of the defense. *See Garza*, 2009-NMSC-038, ¶ 35.  Defendant does not argue that he suffered undue pretrial incarceration or that his defense was impaired by the delay. Instead, Defendant focuses on the conditions of his bond, which imposed restrictions on his liberty and required him to avoid contact with his brother, who was a potential witness in the case. Defendant has not established that the bond restrictions were out of the ordinary—there is no indication in the record that the prohibition against contact with his brother is more than a standard restriction on "contact with the

17

victim(s) or any potential witnesses." As a result, Defendant has not satisfied his burden to demonstrate actual prejudice. *See id.* ¶ 37 (holding that two hours of pretrial incarceration combined with normal bond restrictions did not constitute a showing of cognizable prejudice).

Defendant argues that because the length of the delay is presumptively prejudicial, we must presume that the prejudice factor is satisfied unless the State demonstrates otherwise. The *Garza* Court recently rejected this argument: "[W]e abolish the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is 'presumptively prejudicial' [and] hold instead that a 'presumptively prejudicial' length of delay is simply a triggering mechanism[.]" *Id.* ¶ 21. According to *Garza*, the length of the delay is to be considered as one of four factors—"none of which alone are sufficient to find a violation of the right." *Id.* ¶ 23. A defendant must show particularized prejudice unless "the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay[.]" *Id.* ¶ 39. Thus, Defedant was required to show particularized prejudice in this case and has failed to do so.

**5.  Balancing the Factors**

Although the length of the delay weighs in Defendant's favor, three factors

weigh against Defendant. Of the twenty-two months, only five months weigh slightly against the State. Further, Defendant made no meaningful assertion of the right to a speedy trial, and he demonstrated no cognizable prejudice. Accordingly, we conclude that Defendant's right to a speedy trial was not violated. *See id.* ¶ 40 (determining that there was no speedy trial violation because the defendant "failed to show prejudice, and the other factors [did] not weigh heavily in [his] favor").

**III.    CONCLUSION**

We affirm the district court.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**