This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36001**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOSE LEYBA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jennifer L. Attrep, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**M. ZAMORA, Judge.**

**{1}** Defendant Jose Leyba appeals his convictions for criminal damage to property of a household member, contrary to NMSA 1978, Section 30-3-18(A) (2009), and reckless child abuse by endangerment, contrary to NMSA 1978, Section 30-6-1(D)(1) (2009). Defendant argues (1) his conviction for child abuse is not supported by sufficient evidence; (2) his right to speedy trial was violated by the delay in this case; and (3) the district court erred in failing to dismiss the case as a sanction for the State's failure to respond to Defendant's speedy trial motion in writing. We conclude that Defendant's

conviction for child abuse is not supported by sufficient evidence and thus reverse this conviction. Unpersuaded by Defendant's remaining claims of error, we otherwise affirm.

**DISCUSSION**

**I.      Reckless Child Abuse**

**{2}**      Defendant argues there was insufficient evidence "that [Defendant's] conduct resulted in the type of emotional harm contemplated in endangerment cases." "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We also disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (explaining that appellate courts disregard contrary evidence and inferences). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{3}**      In relevant part, "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be: (1) placed in a situation that may endanger the child's life or health[.]" Section 30-6-1(D). In order to prove the requisite mens rea, the State must present evidence that Defendant "acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3); *see also State v. Consaul*, 2014-NMSC-030, ¶¶ 37-40, 332 P.3d 850 (clarifying that concepts relating to negligence, such as foreseeability, should not be used to describe the mens rea required for reckless child abuse). In order to satisfy this standard, the State must show the risk created by Defendant's conduct was substantial and unjustifiable. *See also* UJI 14-612 NMRA (defining the elements for child abuse not resulting in death or great bodily harm). "[B]y making child endangerment a third[-]degree felony, the Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers." *State v. Schaaf*, 2013-NMCA-082, ¶ 8, 308 P.3d 160 (internal quotation marks and citation omitted). Our Supreme Court has explained the legislative purpose of the reckless child abuse statute is "to punish conduct that creates a truly significant risk of serious harm to children." *State v. Chavez*, 2009-NMSC-035, ¶ 22, 146 N.M. 434, 211 P.3d 891.

**{4}**      This Court has outlined several factors to be considered when determining if the risk created by Defendant's conduct is substantial and unjustifiable:

> One factor is the gravity of the risk, which serves to place an individual on notice that his conduct is perilous[] and potentially criminal. A second

factor is whether the defendant's conduct violates a separate criminal statute, which bolsters the endangerment charge, because the Legislature has defined the act as a threat to public health, safety, and welfare. A third factor, although no longer the determinative factor, is the likelihood of harm, which informs the court of the foreseeability of the risk when evaluating its magnitude.

*Schaaf*, 2013-NMCA-082, ¶ 9 (internal quotation marks and citations omitted).

**{5}**    Consistent with UJI 14-612, the jury was instructed in relevant part:

1.    [Defendant] did repeatedly strike at the bedroom door with a closed fist where [Child] was located.

2.    By engaging in the conduct described in Paragraph 1, [Defendant] caused [Child] to be placed in a situation that endangered the life or health of [Child.]

3.    [Defendant] showed a reckless disregard for the safety or health of [Child.] To find [Defendant] showed a reckless disregard, you must find that [Defendant's] conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [Child]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [Child.]

**{6}**    Testimony at trial established that Defendant came home late one night and began an argument with Mother while her four-year-old daughter (Child) slept in her bedroom. The argument quickly escalated and Defendant began breaking various pieces of furniture inside the house. At this point, Mother removed Child, who was still asleep, from Child's bedroom, brought Child to Mother's bedroom, where Mother eventually retreated and locked the door. Defendant then proceeded to pound and punch Mother's bedroom door with his fists for thirty-five to forty-five minutes. Mother testified that she pressed herself against the bedroom door to keep Defendant from coming inside. Child was awakened by the sound of Defendant's pounding, which caused her to become upset and cry. The evidence showed Defendant's pounding created a hole in the door and caused the door to split from its locking mechanism.

**{7}**    Defendant and the State both premise their arguments on emotional harm allegedly suffered by Child. Accordingly, we focus only on the facts which could have contributed to the emotional harm suffered by Child. We note at the outset that the act of continuously banging on the bedroom door would likely not be sufficient on its own to constitute another criminal violation of any sort. *See Schaaf*, 2013-NMCA-082, ¶ 9 (setting forth the second factor to be considered in evaluating the sufficiency in

endangerment cases, whether the defendant's conduct would constitute a separate criminal violation).

**{8}** The undisputed testimony shows that Child was asleep through the majority of the night's events, only waking to the sounds of Defendant's yelling and banging on Mother's bedroom door. Despite the fact that Child was visibly upset by Defendant's repeated banging on the door, there was no indication that this conduct caused a substantial and unjustifiable risk of emotional harm so great that it falls within conduct exhibiting a reckless disregard for the safety and health of a child, intended to be punishable by the Legislature. *Compare State v. Trujillo*, 2002-NMCA-100, ¶ 19, 132 N.M. 649, 53 P.3d 909 (concluding the evidence was insufficient to support a conviction of child abuse by endangerment where the child had witnessed the defendant attack her mother but there was no evidence that the child was in the direct "line of physical danger"), *with State v. Ungarten*, 1993-NMCA-073, ¶¶ 12-13, 115 N.M. 607, 856 P.2d 569 (holding that sufficient evidence of endangerment existed where Defendant placed child in the direct line of physical danger by thrusting a knife toward child and his father in close proximity), *abrogated on other grounds by Chavez*, 2009-NMSC-035, *and State v. McGruder*, 1997-NMSC-023, ¶ 38, 123 N.M. 302, 940 P.2d 150 (holding that sufficient evidence of endangerment existed where the defendant, after shooting and killing another occupant of the apartment, pointed a gun at the child's mother with the child standing right behind her), *abrogated on other grounds by Chavez*, 2009-NMSC-035.

**{9}** In *Trujillo*, this Court considered the likelihood of emotional harm to a child who witnessed the defendant attack her mother. 2002-NMCA-100, ¶ 19. The defendant had been out drinking throughout the day. *Id.* ¶ 2. He returned home that night and found victim in their bedroom. *Id.* ¶ 3. He yelled at her, hit her with a buckle, and attempted to strangle her. *Id.* He had also locked the door to the bedroom. *Id.* ¶ 4. The noise woke up their eight-year-old daughter who went to see what was happening. *Id.* When he heard their daughter try to open the locked bedroom door, he ordered her back to her room stating "Get your little f—ing ass back to bed because I don't want to have you see me kill your mother." *Id.* ¶¶ 4, 5. The child returned to her bedroom where she stayed while the defendant continued to attack the victim. *Id.* ¶ 5. Despite the child's testimony that she was afraid she would be attacked by the defendant and that she was unable to attend school because of the resulting fear she felt, this Court concluded that her subjective feelings of fear were not sufficient to prove that the defendant's conduct rose to the level of felony child abuse. *See id.* ¶ 20; *see also id.* ¶ 22 (noting that "[t]he evidence presented by the [s]tate in this case, as related to [the d]efendant's conduct toward [the child], fits a pattern typically addressed in civil proceedings under the Children's Code").

**{10}** The State relies on *Ungarten* and *McGruder* in support of its argument that a child may be endangered even if they are not the subject of a violent attack.[1] However, in both cases the child was present and witnessed the defendant's actions as they

---

1 *Ungarten*, 1993-NMCA-073, ¶ 10 and *McGruder*, 1997-NMSC-023, ¶ 37 relied upon Section 30-6-1(C) (1989) which is identical to the current criminal statute for child abuse now at Section 30-6-1(D).

occurred or was "in the line of physical danger," which were not the circumstance in the case at hand. *See Trujillo*, 2002-NMCA-100, ¶ 19. In *Ungarten,* we concluded that the legislative intent of the phrase "may endanger" was "to convey a more restrictive meaning in child abuse cases, i.e., a reasonable probability or possibility that the child will be endangered." 1993-NMCA-073, ¶ 11 (internal quotation marks and citation omitted). We then determined that based on the testimony that the child was standing by his father when the defendant brandished a knife in such a manner that it was hard to determine whether the defendant's actions were directed at the child or his father, "reasonable minds could differ on whether [the d]efendant's acts placed the child in a situation whereby *a reasonable probability* existed that the child's life or health would be endangered." *Id.* ¶¶ 12, 13 (emphasis added). In *McGruder*, the defendant aimed a gun at the victim while her child was standing right behind her, followed victim around her apartment with the gun while she looked for her keys with the child crying the entire time. 1997-NMSC-023, ¶ 38. Defendant also placed the gun to victim's temple and threatened her. *Id.* The *McGruder* court found that there was substantial evidence to support his conviction of endangering either the life or health of the child. *Id.*

**{11}** In this case, we have far less evidence regarding emotional harm than what we considered in *Trujillo*. There was no evidence that Defendant's actions of repeatedly striking at the bedroom door were directed at Child or that he placed her in a situation whereby a reasonable probability or possibility existed such that Child's life or health would be endangered. Child slept through a majority of the night's events, though she eventually woke up to the sound of Defendant's pounding, which caused her to become upset and cry. Child did not witness Defendant damaging other property throughout the house. Child was initially sleeping behind a locked door, but eventually awoke crying while Defendant pounded on that locked door with his fists for the thirty-five to forty-five minutes. Nor does Defendant's act of pounding on the door for an extended timeframe amount to a reckless disregard for the safety or health of Child.

**{12}** This evidence is insufficient to conclude that Defendant's actions placed Child in such a situation whereby a reasonable probability or possibility existed that Child's life or health would be endangered. We therefore conclude the State failed to present sufficient evidence that Defendant's conduct created a substantial and unjustifiable risk of emotional harm to Child. Accordingly, we reverse Defendant's conviction for reckless child abuse.

## II.    Speedy Trial

**{13}** Defendant argues that the district court erred in denying his motion to dismiss the charges against him for violation of his constitutional right to speedy trial. Perceiving no violation, we affirm Defendant's remaining conviction for criminal damage to property of a household member.

**{14}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. In

determining whether a defendant has been deprived of the right to a speedy trial, we weigh and balance four factors from *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121.

**{15}** We defer to the district court's finding regarding the complexity of a case where that determination is supported by the number of charges and the nature of the allegations. *State v. Ochoa*, 2017-NMSC-031, ¶ 15, 406 P.3d 505; *see State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (stating that the district court is in the best position to determine the complexity of a case because of its familiarity with the factual circumstances, contested issues, available evidence, judicial machinery, and "reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities" (internal quotation marks and citations omitted)). Here, the district court found that this was a simple case.

**{16}** Defendant initially argues that we should measure the length of delay in his case starting in December 2013—the date the criminal complaint was filed against him in magistrate court. Defendant acknowledges that generally, the filing of a complaint in magistrate court is not sufficient to trigger a defendant's speedy trial rights for felony offenses. *See State v. Ross*, 1999-NMCA-134, ¶ 15, 128 N.M. 222, 991 P.2d 507 (holding that, because the state is without jurisdiction to try a defendant on a felony prior to the filing of an information or an indictment, a defendant's speedy trial rights for felony offenses cannot be triggered by the filing of a complaint in magistrate court); *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 ("[A]n indictment or information must be filed in a felony prosecution in order to trigger a defendant's speedy trial right and . . . the filing of a complaint in magistrate court is insufficient."). Nonetheless, Defendant argues that this Court should find his right attached upon the filing of the complaint in magistrate court because "the State's initial complaint . . . also included misdemeanors" and because the State never dropped the initial charges against Defendant but instead transferred the same case to district court. Defendant, however, fails to develop this argument beyond these two points and cites no authority in support of either proposition. As such, we consider his argument to be inadequately developed and decline to consider it further. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be"); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). Consequently, we find that Defendant's right to a speedy trial attached January 29, 2015, at the filing of the criminal indictment in district court. The parties agree that the delay concluded at the commencement of trial on August 15, 2016. Thus, the length of delay in this case was eighteen and a half months. We weigh this factor in Defendant's favor, but not heavily. *See State v. Lujan*, 2015-NMCA-032, ¶ 14, 345 P.3d 1103 (weighing the nineteen-month delay in a simple case "at least slightly" in the defendant's favor).

**{17}**     Defendant does not raise any argument regarding the reasons for delay, nor the assertion of the right factor, but does argue, as he did below, that he has been prejudiced by the delay in this case. We are mindful that "some degree of . . . anxiety is inherent for every defendant . . . awaiting trial. Therefore, we weigh this factor in the defendant's favor only where . . . the anxiety suffered is undue." *Lujan*, 2015-NMCA-032, ¶ 20 (internal quotation marks and citation omitted). Defendant fails to point this Court to any particularized prejudice resulting from the delay, instead opting to argue generally that he suffered oppressive deprivations of his liberty and undue anxiety and concern. Defendant's failure to assert any particularized prejudice is fatal to his speedy trial claim in this case because the other three factors do not weigh heavily in his favor. *See State v. Garza*, 2009-NMSC-038, ¶ 40, 146 N.M. 499, 212 P.3d 387 (declining to find a violation of the defendant's speedy trial right where he failed to show particularized prejudice and the other *Barker* factors did not weigh heavily in his favor). Accordingly, we conclude Defendant's right to speedy trial was not violated by the delay in this case.

### III.     The State's Failure to Respond to Defendant's Speedy Trial Motion

**{18}**     Finally, Defendant argues the district court erred in denying his speedy trial motion because the State failed to respond in writing. In support of this argument, Defendant cites LR1-201(B) NMRA, *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428, P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶ 24, 103 N.M. 655, 712 P.2d 1. We note LR1-201(B) provides that—in *civil cases*—a party may submit a proposed order on their motion if the opposing party has failed to respond to the motion under certain circumstances. The basis for Defendant's argument is unclear, and Defendant cites no authority supporting his assertion that this civil rule should apply in criminal cases or that his motion should have been granted based on the State's failure to file a written response. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be"). We therefore conclude that Defendant has not demonstrated that the district court erred in this regard.

### CONCLUSION

**{19}**     Based on the foregoing, we reverse Defendant's conviction of reckless child abuse for insufficient evidence and remand to the district court to enter an amended judgment and sentence. We affirm Defendant's conviction for criminal damage to property of a household member.

**{20}     IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**