**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-074

Filing Date:  June 18, 2009

Docket No. 28,028

STATE OF NEW MEXICO,

      **Plaintiff-Appellant,**

v.

HERIBERTO PALACIO,

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Stephanie Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**CASTILLO, Judge.**

**{1}**      In this appeal we address whether a nine-year delay—the longest delay we have found in any of our reported New Mexico cases—violated Defendant's right to a speedy trial.  The district court dismissed the case, the State appeals, and we affirm.

**I.      BACKGROUND**

**{2}**      On August 28, 1998, Defendant was indicted in district court for embezzling his

1

sister's Chevrolet pickup. Defendant, who was already on parole, responded by fleeing to El Paso, and a bench warrant was issued for his arrest. The bench warrant was entered into the NCIC database. On September 1, 1998, the New Mexico Corrections Department issued an arrest warrant.

**{3}** It did not take long for Defendant to be arrested. He was picked up by border authorities on December 7, 1998, when he tried to cross from Mexico into Texas carrying drugs. He was incarcerated in El Paso on a drug charge based on this arrest. On December 8, 1998, the New Mexico Corrections Department lodged a detainer against Defendant and sent it to the El Paso County Detention Center. In March 1999, Defendant pled guilty to the Texas drug charge, and he remained incarcerated.

**{4}** When Defendant was released on parole in August 2000 on the Texas conviction, his caseworker discovered the New Mexico detainer. According to Defendant, the caseworker tried to contact New Mexico three times before releasing him. Defendant also testified that shortly thereafter, while he was in El Paso on parole, his parole officer advised him that there was an outstanding New Mexico bench warrant. Defendant explained that he was held for almost an entire day until the officer released him, saying, "I guess they don't want you."

**{5}** In 2004, Defendant was again arrested in Texas. He testified that he was denied bail because of the New Mexico detainer but that, seven days later, he was released on bail and told, "I guess they dropped the detainer." Referring to the detainer, Defendant said, "I thought maybe somebody just dropped it or forgot about it." Defendant served eighteen months in prison after being convicted on the 2004 Texas arrest. He was finally transferred to New Mexico in January 2007 on the August 28, 1998 embezzlement charge.

**{6}** The State offered no testimony to rebut Defendant's assertions. Instead, it argued that Defendant had absconded and never made any request for a speedy trial.

**{7}** The court noted that the delay—from August 1998 until August 2007 when the speedy trial motion was heard—had been almost nine years. It remarked that on at least two occasions, if not three, the State had an opportunity to enforce its detainer and to bring Defendant back to New Mexico. The court, crediting Defendant's testimony, said that New Mexico had twice declined to obtain custody of Defendant. The court further noted that El Paso was only forty-five minutes away; yet, New Mexico did not pursue Defendant. The court stated that a combination of reasons caused the delay, but found that the reasons for the delay weighed against the State based on the principle that Defendant did not have to turn himself in to be tried. Consequently, the court granted Defendant's motion.

## II.    DISCUSSION

**{8}** We apply the four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether a defendant's constitutional right to a speedy trial has been violated. *See State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522. Under the *Barker* test, we balance, in light of the facts and circumstances of the particular case, (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) the

prejudice to the defendant. *Plouse*, 2003-NMCA-048, ¶ 34. The first factor, the length of the delay, involves a two-fold inquiry. *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. We first decide whether the delay is presumptively prejudicial and, if it is, we then balance the length of the delay against the remaining three factors to assess whether a defendant's constitutional rights have been violated. *State v. Urban*, 2004-NMSC-007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. The burden is on the state to establish that the Barker factors do not support dismissal. *See State v. Talamante*, 2003-NMCA-135, ¶ 11, 134 N.M. 539, 80 P.3d 476.

**{9}** We are deferential to the district court's fact finding, but independently examine the record to determine whether a speedy trial violation has taken place. *State v. Tortolito*, 1997-NMCA-128, ¶ 6, 124 N.M. 368, 950 P.2d 811. We analyze speedy trial claims on a case-by-case basis, examining all four factors with no one factor as talismanic. *See Urban*, 2004-NMSC-007, ¶ 11.

### 1. Length of Delay

**{10}** The State contends that Defendant's 1998 indictment was a magistrate court indictment and that, under *State v. Ross*, 1999-NMCA-134, 128 N.M. 222, 991 P.2d 507, Defendant's right to a speedy trial had not attached. We need not address the implications of *Ross* because the record does not support this contention. Defendant's right to a speedy trial attached on August 28, 1998, when a grand jury indictment was filed against Defendant in district court. *See State v. Maddox*, 2008-NMSC-062, ¶ 10, 145 N.M. 242, 195 P.3d 1254 ("We calculate the length of delay from the date the Sixth Amendment right to a speedy trial attached when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." (internal quotation marks and citation omitted)). We are therefore dealing with a total delay of nine years, from August 1998 until August 2007.

**{11}** The State also argues that the speedy trial clock did not start with the indictment in the district court because Defendant fled and that time should run from June 2007 when Defendant was arraigned on the embezzlement charge. Using this calculation, the State argues that we are dealing with a mere three-month delay. We disagree. The first two factors—the length of delay and the reasons for delay—are analytically distinct. *See id.* ¶ 13 ("The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay."). In our view, the fact that Defendant absconded is appropriately considered under the portion of the analysis addressing reasons for delay and not in calculating the length of delay.

**{12}** Having calculated the length of delay, we consider whether it was sufficiently long to permit a presumption of prejudice. Our Supreme Court has "adopted bright-line guidelines to determine whether the length of delay is presumptively prejudicial, depending on the level of complexity involved in prosecuting a case." *Id.* ¶ 9. We are directed to first assign a level of complexity to a case: simple, intermediate, or complex. *Id.* Applying a fixed length of time to the complexity of the case, prejudice is presumed in the face of delays of nine, twelve, and fifteen months respectively for simple, intermediate, or complex cases.

3

*Id.* In the present case, the delay is so long that it was presumptively prejudicial regardless of the level of complexity. Accordingly, the burden shifts to the State to show that Defendant's Sixth Amendment right to a speedy trial has not been violated. *See id.* ¶ 12.

## 2. Reasons for Delay

**{13}** The delay in this case weighs against both sides. Defendant's conduct in fleeing New Mexico as well as committing crimes and being twice incarcerated in Texas all contributed to the delay. The period during which Defendant fled New Mexico and was incarcerated in Texas, from August 1998 until his release on August 9, 2000, weighs solely against him. *See Talamante*, 2003-NMCA-135, ¶ 14 (holding that when the defendant failed to appear, the delay was attributable to him).

**{14}** The court accepted Defendant's testimony that upon his release in Texas in August 2000, New Mexico was notified and chose to do nothing. The court also accepted Defendant's testimony that when he was arrested in Texas in 2004, the State again failed to take the opportunity to obtain custody of Defendant. We defer to the court's findings on these factual issues. *See Doggett v. United States*, 505 U.S. 647, 652 (1992) (accepting the trial court's findings that the government was not diligent in trying to find the defendant and bring him to trial); *Tortolito*, 1997-NMCA-128, ¶ 6. The State did not avail itself of the opportunity to gain custody of Defendant until January 2007 when he was released from his second term of incarceration in Texas.

**{15}** The State is not responsible for periods of delay in which a defendant is outside of the jurisdiction and it is unaware of his or her whereabouts. *See Maddox*, 2008-NMSC-062, ¶¶ 15-16. The State, however, admits that the New Mexico authorities "apparently knew where Defendant was some of the time when Defendant was incarcerated in Texas," but asserts that the record is unclear why Defendant was not brought back to New Mexico and when New Mexico was actually notified of Defendant's release from Texas custody.

**{16}** The gaps in the evidentiary record do not aid the State. Defendant testified that the State had two opportunities to detain him and yet declined to take action. In light of the length of the delay and the presumption of prejudice, it was the State's burden to establish that Defendant's right to a speedy trial was not violated. *Id.* ¶ 12. The State, however, failed to introduce any evidence rebutting Defendant's testimony or filling in gaps in the record. If, as the State now argues, the reasons New Mexico authorities did not attempt to obtain custody of Defendant are unclear, that is because the State introduced no evidence to clarify the record. The fact that the State did not rebut Defendant's testimony does not operate in its favor. *See Laney*, 2003-NMCA-144, ¶ 19 (noting that where the state failed to explain the delay, the state did not meet its burden of persuasion); *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) (holding that where the record did not contain a single shred of evidence of the government's efforts to track down the defendant during the five-year delay, the defendant was denied a speedy trial).

**{17}** It is well established that bureaucratic indifference weighs against the State and can establish a speedy trial violation. *See Doggett*, 505 U.S. at 652-53 (holding that an eight and

one-half year delay, where the defendant was partly in a foreign country and partly living in the United States, violated the defendant's right to a speedy trial where the government did not act with reasonable diligence in trying to locate him and bring him to trial); *Zurla v. State*, 109 N.M. 640, 643-44, 789 P.2d 588, 591-92 (1990) (holding that sheer bureaucratic indifference weighs heavily against the state); *State v. Stock*, 2006-NMCA-140, ¶ 29, 140 N.M. 676, 147 P.3d 885 (stating that although there was blame on both sides, the defendant's right to a speedy trial was violated where the state failed to monitor the case); *Talamante*, 2003-NMCA-135, ¶ 14 (concluding that the state's failure to produce witnesses for interviews, the unavailability of the prosecutor for trial, the staffing changes in the prosecutor's office, and the trial court's docket, demonstrated "unacceptable indifference" to the state's duty to bring the case to trial within a reasonable time); *Laney*, 2003-NMCA-144, ¶ 17 (stating that bureaucratic indifference or failure to bring a case to trial weighs more heavily against the state than negligent delay—such as excessive caseload).

**{18}**    *Zurla*, relying on *State v. Harvey*, 85 N.M. 214, 510 P.2d 1085 (Ct. App. 1973), notes that the failure to use judicial machinery to extradite a defendant from another state weighs heavily against the State. *See Zurla*, 109 N.M. at 643-44, 789 P.2d at 591-92. "[W]here a mechanism exists to bring a defendant to trial, the [s]tate has a duty to use it." *State v. Lujan*, 2003-NMCA-087, ¶ 15, 134 N.M. 24, 71 P.3d 1286. It is immaterial whether the district attorney's office or some other governmental entity failed to respond to the notice from Texas authorities. *See State v. Marquez*, 2001-NMCA-062, ¶ 17, 130 N.M. 651, 29 P.3d 1052 (noting that, for purposes of speedy trial analysis, the fact that the delay was caused by a governmental entity other than the prosecutor's office does not protect the state, because the government as an institution is charged with assuring a defendant a speedy trial).

**{19}**    Given the record and the facts as found by the trial court, we conclude that the delay from 2000 until 2007 was the result of unexplained bureaucratic indifference. *See United States v. Mendoza*, 530 F.3d 758, 763-64 (9th Cir. 2008) (holding that a ten-year delay, in which the government did nothing more than enter an arrest warrant into a law enforcement database and made no serious effort to find the defendant and bring him to trial, denied the defendant the right to a speedy trial). The State's failure to act demonstrates indifference. *See Doggett*, 505 U.S. at 653. Consequently, we weigh this period of delay against the State.

**{20}**    Defendant, however, is far from blameless. His flight to Texas, as well as his commission of additional crimes and subsequent incarceration, all contributed to the delay. Although some responsibility for the delay is his, a criminal defendant has no duty to bring himself to trial. *Barker*, 407 U.S. at 527. The State bears the primary responsibility to bring a case to trial within a reasonable period of time. *See Marquez*, 2001-NMCA-062, ¶ 15 ("The [s]tate has a constitutional duty to make a diligent, good-faith effort to bring [the d]efendant to trial."). As stated in *Stock*, "the [s]tate cannot be permitted to sit on its hands during extraordinary periods of delay," and even though both parties were at fault, "we weigh [the reasons for delay] against the [s]tate because it is the [s]tate's responsibility to bring a defendant to trial." 2006-NMCA-140, ¶ 29 (internal quotation marks omitted).

**{21}**    We recognize that our Supreme Court has recently determined that a twenty-eight-month delay, during which the defendant was incarcerated in another state, did not violate

5

the defendant's right to a speedy trial. *See Maddox*, 2008-NMSC-062, ¶ 1. There, the defendant was subject to a detainer, and there was evidence that the state knew that the defendant was incarcerated in Florida. *Id.* ¶¶ 17-18. The Court held that under the circumstances, the state was permitted to wait for the defendant to be arrested before taking further action to bring him to New Mexico for trial. *Id.* The Court reasoned that because the defendant had made a request under the Interstate Agreement on Detainers Act (IAD), any request to extradite the defendant would have been futile and, therefore, no blame for the delay was attributable to the state. *Maddox*, 2008-NMSC-062, ¶ 22. The Court explained that the state has no affirmative duty to seek custody simply because it is aware that a prisoner is incarcerated in another state. *Id.* ¶ 18.

**{22}** We do not interpret *Maddox* to express a blanket rule that the State is never required, under any circumstances, to attempt to obtain custody of a prisoner in another jurisdiction. There are important factual distinctions between the present case and *Maddox*—the most obvious distinction being that the twenty-eight-month delay in *Maddox* is dwarfed by the nine-year delay in the present case. In addition the State must generally offer a "reasonable explanation why it was not aware—or why it could not have become aware—that [a d]efendant was in its custody," and the State is deemed to have constructive knowledge "of individuals in the [s]tate's custody." *Id.* ¶ 16. The *Maddox* Court did not charge the state with constructive knowledge of the defendant's whereabouts because the defendant was incarcerated in another jurisdiction. *Id.* ¶ 17. In *Maddox*, there was no communication between New Mexico and the state of incarceration; rather, the state pursued information about the defendant's location through his counsel after entry of appearance in the case. *Id.* In the present case, the State had actual notice of Defendant's location—the Texas authorities contacted New Mexico at least twice to inform the State that Defendant was available for prosecution. There is no need to infer constructive knowledge of Defendant's whereabouts because the State was given the necessary information but failed to act.

**{23}** We further observe that the complicated relationship between the Sixth Amendment and the IAD played a significant role in the *Maddox* Court's analysis. 2008-NMSC-062, ¶¶ 18-23. Because the *Maddox* defendant asserted his right to a speedy trial under the IAD and its specific time limitations, it would have been "impractical" for the state to try to extradite the defendant to New Mexico for trial. *Maddox*, 2008-NMSC-062, ¶ 22. In addition, there was some confusion about whether the state's detainer on defendant or the defendant's assertion of rights triggered the IAD. There was no doubt that the detainer was filed first and some months later, the defendant asserted his rights under IAD. *Maddox*, 2008-NMSC-062, ¶ 3. Different time limitations and obligations apply to the different triggering mechanisms. *See id.* ¶ 18. Thus, the defendant's delay in asserting his rights under IAD weighed against his speedy trial claim. Nevertheless, the *Maddox* Court acknowledged that "[o]utside of the IAD time limitations, [the d]efendant's Sixth Amendment right gave the [s]tate some obligation to pursue his extradition." *Id.* ¶ 21. The Court weighed the defendant's inaction, the futility of seeking extradition, and the state's separate Sixth Amendment obligation to bring the defendant to trial and concluded that the time period between the defendant's release from jail and his return to New Mexico weighed neutrally against the parties. *Id.* ¶ 23.

**{24}** In the present case, there is no indication or argument that either party invoked the IAD, and we thus consider the State's obligation solely under the Sixth Amendment. We see no futility in the current circumstances: the State knew where Defendant was, and it had the opportunity—twice—to immediately seek extradition. Defendant made no untimely assertion of rights under the IAD. We are thus left with the State's undeniable obligation under the Sixth Amendment to bring a defendant to trial within a reasonable period of time.

**{25}** Based on these distinctions, we are unpersuaded that *Maddox* requires a different result. Accordingly, we conclude that the State has provided no explanation for the seven years of delay between Defendant's first release from Texas custody in 2000 and his arraignment on charges in New Mexico in 2007. As a result, we weigh this period against the State. *See Urban*, 2004-NMSC-007, ¶ 15 (weighing a period of time against the state for which it offered no explanation for the delay).

### 3. Assertion of the Right

**{26}** We now turn to the third factor—assertion of the speedy trial right. Defendant's first assertion of the right to a speedy trial was by pro se motion on May 14, 2007. As we have pointed out, Defendant did not file any request for a speedy trial under the IAD while he was incarcerated in Texas. The State argues that "Defendant never evinced any desire whatsoever to obtain the benefits of his speedy trial right." Defendant testified that he filed his May 2007 pro se motion for a speedy trial as soon as he realized that New Mexico was still proceeding on the embezzlement charge. Because the record indicates that neither party was interested in resolving the outstanding charge, we decline to weigh this factor in favor of Defendant or against the State.

### 4. Prejudice

**{27}** We consider three different types of prejudice in a speedy trial analysis: (1) oppressive pretrial incarceration; (2) the accused's anxiety and concern; and (3) the possibility of an impairment to the defense. *See Zurla*, 109 N.M. at 644, 789 P.2d at 592. Sixth Amendment prejudice, however, is not limited to such consequences. "'[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.'" *Zurla*, 109 N.M. at 648, 789 P.2d at 596 (alteration in original) (citation omitted). "The sixth amendment right to a speedy trial also protects against interference with a defendant's liberty, disruption of employment, curtailment of associations, subjection to obloquy, and creation of undue anxiety." *Salandre v. State*, 111 N.M. 422, 427, 806 P.2d 562, 567 (1991) (internal quotation marks and citation omitted); *see Talamante*, 2003-NMCA-135, ¶ 17. In addition, "the delay may be so lengthy that the presumption of prejudice becomes well-nigh conclusive and proof of actual prejudice is unnecessary." *State v. Johnson*, 2007-NMCA-107, ¶ 29, 142 N.M. 377, 165 P.3d 1153 (quoting *Work v. State*, 111 N.M. 145, 148, 803 P.2d 234, 237 (1990)).

**{28}** Defendant points to the following incidents of prejudice: that he lost the opportunity to serve concurrent sentences, that he lost employment, that he experienced anxiety and

concern, and that his defense was impaired because the accuser's memory had faded. The most compelling indicator of prejudice in the present case, however, is the passage of seven years. The length of the delay, considered with other factors, has been held to be sufficient to establish Sixth Amendment prejudice. *See Doggett*, 505 U.S. at 652 ("[T]he presumption that pretrial delay has prejudiced the accused intensifies over time."); *Work*, 111 N.M. at 148, 803 P.2d at 237 (stating that the delay may be so lengthy as to become conclusive, thereby making proof of actual prejudice unnecessary). As stated in *Doggett*, the erosive effects of the passage of time can rarely be shown. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655. Consequently, *Doggett*—addressing an eight and one-half year delay—held that the defendant's inability to demonstrate specific and tangible prejudice was not fatal to his speedy trial claim. *Id.* at 657 ("[N]either is negligence automatically tolerable simply because the accused cannot demonstrate exactly how he was prejudiced.").

**{29}**    We have attributed seven years of the delay to the State's bureaucratic indifference. The resulting presumption of prejudice was not rebutted by the State. Consequently, we weigh the prejudice factor in Defendant's favor. *See Urban*, 2004-NMSC-007, ¶ 20 ("[W]e do conclude the total delay, and complete lack of an acceptable reason for fourteen months of it, creates a strong presumption of prejudice, too high for the [s]tate to rebut on the facts of this case."); *see also Stock*, 2006-NMCA-140, ¶ 38 (noting that as the length of delay increases, the presumption of Sixth Amendment prejudice grows stronger and the degree of actual prejudice to mounting a defense that must be shown is correspondingly reduced).

### 5.    Balancing the Factors

**{30}**    Nearly seven years of the delay were caused by the State's failure to pursue the embezzlement charge, despite having the knowledge of Defendant's location and two opportunities to take him into custody. Although Defendant is also responsible for a portion of the delay, the great length of time attributable to the State's inaction balances the *Barker* factors in Defendant's favor. Accordingly, we hold that Defendant's right to a speedy trial was violated.

### III.    CONCLUSION

**{31}**    We affirm the district court.

**{32}    IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

8

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for** *State v. Palacio*, **No. 28,028**

| | |
|---|---|
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DT | Detainer |
| CA-RD | Right to Speedy Trial |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-ST | Speedy Trial |