This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                  NO.   29,591

**FERNANDA COBRERA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**KENNEDY, Chief Judge.**

{1}    In this case, we consider Defendant's claims of a speedy trial violation based on a delay of two years and seven months, as well as claims that she was improperly prevented from introducing evidence that a witness had been convicted of a crime of dishonesty and that the victim's ex-husband could have committed the crime. Defendant also asserts that the district court issued an erroneous shotgun instruction to the jury. Because less than six months of the delay is attributable to the State, and Defendant fails to show that she experienced any particularized prejudice as a result of the delay, we hold that her speedy trial claim fails. We hold that her evidentiary issues were not properly preserved and do not consider them further, and the district court's questionable instruction did not rise to the level of fundamental error. We affirm.

**I.    BACKGROUND**

{2}    Fernanda Cobrera (Defendant) and her husband, Jose Cobrera, were in the midst of a divorce. Defendant moved out of their house with most of her possessions, and Sandra Hernandez (the victim) moved in with Jose. One week later, Jose's house was broken into, and the victim's property was damaged. Defendant was later indicted and charged with various crimes associated with the break-in, although she was acquitted of all charges save the one underlying this appeal. Defendant's case proceeded to

experience various delays, as we outline in detail below. She was eventually convicted of criminal damage to property.

{3}    Defendant appealed. The New Mexico Supreme Court reversed our previous holding regarding evidence of the damaged property and remanded with instructions for this Court to consider Defendant's remaining issues.

## II.    DISCUSSION

{4}    On remand, we consider Defendant's four remaining claims.

## A.    Speedy Trial

{5}    Defendant argues that her right to a speedy trial, under both the United States and New Mexico Constitutions, was violated by the time that elapsed between her first arrest and her first trial. U.S. Const. amends. VI, XIV; N.M. Const. art. II, § 14.

> We conduct our analysis by balancing four factors: (1) the length of the delay in bringing the defendant to trial, (2) the reasons for the delay, (3) the defendant's assertion of [her] right to a speedy trial, and (4) the actual prejudice suffered by the defendant as a result of the delay.

*State v. Parrish*, 2011-NMCA-033, ¶ 10, 149 N.M. 506, 252 P.3d 730. "We evaluate speedy trial claims on a case-by-case basis, independently balancing the four factors and considering no individual factor as talismanic." *Id.* "In considering each of these factors, we defer to the [district] court's factual findings[,] but review de novo the question of whether [the d]efendant's constitutional right [to a speedy trial] was violated." *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113.

## 1.     Length of the Delay

{6}     The delay in Defendant's trial is calculated beginning from when she was first accused.  Defendant contends that she was first accused when the initial indictment was filed on May 13, 2005.  However, Defendant did not receive notice of this indictment or the arraignment set for June 14, 2005, until she was arrested on a bench warrant on December 3, 2005, for failing to appear.  Neither party cites authority to support their arguments for when the clock should start.  However, the right to a speedy trial attached when the defendant became an accused by way of either a formal indictment or information.  *State v. Manzanares*, 1996-NMSC-028, ¶ 8, 121 N.M. 798, 918 P.2d 714.  In the present case, the indictment preceded her arrest and, although Defendant was not aware of the charges against her until her arrest, the clock had already started for purposes of a speedy trial analysis.  Even if we began counting from the later arrest, a speedy trial analysis would still be triggered as over two years passed between the arrest and Defendant's first trial on December 18-20, 2007.

{7}     This delay exceeds the amount of time deemed "presumptively prejudicial" in order to trigger further analysis of the merits of Defendant's claim of a violation of her speedy trial rights.  *See State v. Garza*, 2009-NMSC-038, ¶¶ 42, 47, 146 N.M. 499, 212 P.3d 387.  The State concedes that this case may be characterized as simple.  For a simple case, the amount is one year.  *Id.* ¶ 47.  As the delay of two years and seven

months is well beyond the threshold of one year for being considered presumptively prejudicial in a simple case, we therefore turn to the merits of Defendant's claim of a speedy trial violation. *State v. Stock*, 2006-NMCA-140, ¶ 12, 140 N.M. 676, 147 P.3d 885 ("When a speedy trial claim is made, the defendant must make a threshold showing that the length of delay is presumptively prejudicial. Once that showing has been made, the burden of persuasion shifts to the [s]tate to show, on balance, that the four factors do not weigh in favor of dismissal." (internal quotation marks and citation omitted)).

**2.      Reason for the Delay**

{8}      The appellate courts have recognized three different reasons for delay and have explained that "different weights should be assigned to different reasons for the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). The three reasons for the delay are (1) intentional delay, which is weighed heavily against the state; (2) negligent or administrative delay, which is weighed against the state but less heavily; and (3) a valid reason related to preparing for trial, which does not count against the state. *Id.* ¶¶ 25-27. Here, the district court found that the reasons for the delay were, on balance, Defendant's unreadiness for trial. The first period of time in question is the seven months between the indictment and Defendant's arrest when she first became aware of the charges against her. Defendant

5

argues that delay should be attributable to the State for failing to properly serve her. As the State argues that the time from the indictment until Defendant's arrest should not even count for speedy trial analysis, the State does not provide an alternative explanation for that time. As the State did not rebut the presumption that this time counts against it, we conclude that these seven months after the indictment weigh against it.

{9}     The delay from Defendant's arrest on December 3, 2005, until the first trial date that was set on August 14, 2006, is attributable to Defendant. Defendant's counsel was replaced by a different attorney from the public defender's office about three weeks before trial was scheduled, and the new counsel asked for a continuance due to unfamiliarity with the case. The district court found that delay should not count against the State, as it was due to Defendant's counsel being unable to move the case forward. A delay due to Defendant's new counsel being unready for trial is attributable to Defendant. *State v. Johnson*, 2007-NMCA-107, ¶ 16, 142 N.M. 377, 165 P.3d 1153 (holding that the delay from a new trial setting at the request of a new counsel representing the defendant was attributable to the defendant).

{10}     The defense then moved three subsequent times to continue the trial. This delay is also attributable to Defendant. Defendant first moved to continue the trial based on her counsel's "unfamiliarity with the case and lack of pretrial interviews." The trial

was reset from August 2006 to October 2006, but was then continued for two more weeks at the request of Defendant. Next, Defendant requested a third continuance based on her claim that she had failed to receive the transcripts of the pretrial interviews she had conducted. The trial was eventually reset for late November 2006. This delay, from August 2006 until November 2006, is attributable to Defendant. We recognize cases holding that, when defense counsel is solely responsible for a delay that does not benefit the defendant, that delay may count toward finding a speedy trial violation. *Stock*, 2006-NMCA-140, ¶ 21. However, this issue has not been raised in this case and is noted only as a cautionary reference.

{11} The district court then reset the trial from November 2006 for late January 2007, based on other trial settings and a curtailed holiday schedule. The district court then reset the trial a final time due to other trial settings for April 2007. This delay from November 2006 until April 2007, a period of roughly five months, is attributable to the State. *State v. Palacio*, 2009-NMCA-074, ¶ 18, 146 N.M. 594, 212 P.3d 1148 (stating that, "for purposes of speedy trial analysis, the fact that the delay was caused by a governmental entity other than the prosecutor's office does not protect the state, because the government as an institution is charged with assuring a defendant a speedy trial").

7

{12}     At the time scheduled for the trial in April 2007, the district court instead held a two-day hearing on a motion in limine that revealed defects with the indictment. The district court dismissed the indictment based on false testimony having been presented to the grand jury.  Although this hearing is not in the record before us, it was discussed at the later speedy trial hearing.  The indictment was found to have been based on false testimony by a police officer regarding the existence of a taped confession by Defendant, which did not exist.  The State quickly re-indicted Defendant.  No one disputes that the time used for the speedy trial calculations did not restart, but continued to accrue from the first indictment.

{13}     Defendant argues that because the two-week delay between dismissal and re-indictment was due to the faulty indictment, it should count against the State.  The State does not argue on appeal that any more of the delay than those two weeks is attributable to the State's faulty indictment.  The district court did not designate that delay as the fault of either party.  Because Defendant did not fulfill her burden to include the first indictment in the record on appeal, we assume that, for the sake of argument and due to the lack of a clear finding by the district court, those two weeks are attributable to the State.  *See State v. Padilla*, 1980-NMCA-141, ¶ 7, 95 N.M. 86, 619 P.2d 190.

**{14}** After the re-indictment, the trial was scheduled to begin in five months in September 2007. The State moved for a definite trial setting in late August. At the hearing on that motion, Defendant's counsel "indicated that he did not think he could be ready" by the scheduled trial. The State noted that, despite the case's presence on the district court's docket since December 2005, pretrial interviews had not been completed, but would be completed soon. Defendant consented to the State filing a Rule 5-604 NMRA petition to extend the time for commencement of trial in order to reschedule trial for December 2007. *See* Rule 5-604. The delay between September and December is therefore attributable to Defendant and her unreadiness as the district court recognized.

**{15}** Ten days before trial was scheduled, Defendant filed a motion to dismiss based on a violation of her speedy trial rights under the New Mexico and United States Constitutions. The district court held a hearing on the matter at the beginning of the time scheduled for trial. The district court found that the majority of the delay was attributable to Defendant and thus denied her motion and proceeded with the trial. The district court found that, while "at first blush it would seem that it would be an appropriate motion that would be well taken, . . . I do find that [although] there has been [a] delay, . . . the majority of the delay is attributed to . . . Defendant." The December 2007 trial resulted in a hung jury, and the district court declared a mistrial.

{16}     Although Defendant mentions in her brief that we should consider the time after the mistrial until her second trial as part of the delay, she provides no further support for that argument. After the mistrial was declared, the State moved for a trial to be set within the six months allowed at the time under Rule 5-604 for Defendant to be re-tried. *See State v. Reyes-Arreola*, 1999-NMCA-086, ¶ 20, 127 N.M. 528, 984 P.2d 775 (referring to the old six-month rule, but which reasoning remains relevant, "[t]he rule clearly contemplates permitting an additional six months to try a case after declaration of a mistrial"). The retrial in this case took place in July 2008, after an extension of time granted by the Supreme Court. This seven-month delay, not discussed by Defendant on appeal, is not attributable to the State because it had previously moved for a definite trial setting and requested the extension. The State asked for the extension because the length of time from the December 17, 2007 declaration of a mistrial until the June 30, 2008 date scheduled for retrial would slightly exceed the six months mandated by Rule 5-604 at the time. The time between the declaration of a mistrial and Defendant's retrial does not trigger our speedy trial analysis.

{17}     In the two years and eighteen days between Defendant's arrest and her first trial, one year and two weeks weigh against the State. Several months of that was administrative delay caused by overcrowded courts, which weighs against the State,

but not heavily. *Garza*, 2009-NMSC-038, ¶¶ 29-30. Because the parties agree that this was a simple case, under our *Barker* analysis we weigh the reasons for the delay factor slightly in favor of Defendant. Even though much of the delay can be attributable to Defendant, over twelve months is properly attributed to the State in this simple case.

**3.      Assertion of the Right**

{18}      Defendant asserted her right to a speedy trial in a demand for a speedy trial in May 2007, at the time of her re-indictment and in her motion to dismiss based on a speedy trial violation at her first trial in December 2007. We analyze the assertion of the right on a case-by-case basis. *Garza*, ¶¶ 32-33.

{19}      Even though Defendant asserted her right to a speedy trial in May, she was later unprepared for trial in the following September as discussed above. The motion was filed only days before the trial scheduled in December 2007, thus not allowing the State time to file a response. "[W]e assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, we accord weight to the frequency and force of the defendant's objections to the delay. We also analyze the defendant's actions with regard to the delay." *Id.* ¶ 32 (internal quotation marks and citations omitted). Assertion at a late date is timely, but it is not entitled to much weight. *State v. White*, 1994-NMCA-084, ¶ 6, 118 N.M. 225, 880 P.2d 322 (giving little weight to

11

an assertion of the right two days before trial).  Here, Defendant asserted her right, but it was only ten days before trial.  We accord the previous pro forma motion she filed little weight.  *See State v. Wilson*, 2010-NMCA-018, ¶ 46, 147 N.M. 706, 228 P.3d 490.  This factor therefore weighs in Defendant's favor, but only slightly.

**4.     Prejudice to Defendant**

{20}     "When the state has delayed long past the time considered presumptively prejudicial, its burden to show on the record that [the] defendant's right to a speedy trial was not violated becomes correspondingly heavier." *Salandre v. State*, 1991-NMSC-016, ¶ 27, 111 N.M. 422, 806 P.2d 562, *holding modified by Garza*, 2009-NMSC-038, ¶ 22.  "[W]e weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35.  "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.*

{21}     Defendant argues that she suffered undue anxiety in the form of sleepless nights, decreased work performance resulting in economic hardship, and an inability to travel outside the area.  Non-particularized prejudice "is not the type of prejudice against which the speedy trial right protects." *Id.* ¶ 37 (holding that non-particularized prejudice is not cognizable under this factor).  In *Garza*, the defendant was held two

12

hours in jail and then released on a standard bond, and our Supreme Court did not find that he suffered adequately particularized prejudice. *Id.* Defendant cites *Salandre* that deals with a situation where evidence was destroyed and, therefore, a defendant's ability to put on his case was impaired. 1991-NMSC-016, ¶ 6. Here, Defendant does not claim that her ability to put on her case was compromised by the delay, only that she suffered anxiety. Defendant's general claims of anxiety do not show particularized prejudice beyond what any accused suffers. *Parrish*, 2011-NMCA-033, ¶ 33 (stating that this Court was unconvinced by the defendant's allegations that he suffered "unduly harsh conditions of release and undue anxiety due to his travel restrictions, restrictions on handling firearms, and concerns that his job or professional membership might be affected by a conviction" because the prejudice was similar to that which any accused might suffer).

{22}    A defendant must show particularized prejudice in order for this Court to determine that his or her right to a speedy trial was violated. *Id.* ¶ 35. The exception to this showing of prejudice is when "both the length and reasons for the delay weigh heavily in the defendant's favor and the defendant has asserted his speedy trial right and not acquiesced to the delay[.]" *Id.* (alterations, internal quotation marks, and citation omitted). Here, the year of delay attributable to the State, much of which was administrative delay, coupled with Defendant's numerous continuances and her last

13

minute assertion of the right, do not weigh heavily in Defendant's favor.  Therefore, because she does not show particularized prejudice, her speedy trial violation claim fails.

**B.     The Victim's Conviction for a Crime of Dishonesty**

{23}     Defendant next argues that the district court erroneously denied her motion in limine to allow evidence of the victim's previous conviction for a crime involving dishonesty, pursuant to Rule 11-609(A)(2) NMRA.  However, Defendant only cites to the pretrial motion filed in Defendant's first trial.  There is no record that Defendant attempted to introduce that evidence or otherwise obtained a ruling on the issue at either trial.  Defendant has not provided a complete record of the first trial, and it is clear from the record that the issue was not raised at the second trial from which this appeal stems.  On appeal, the reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error.  *In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431.  Without provoking a ruling from the district court, Defendant has not preserved the issue for appeal.  *State v. Silva*, 2008-NMSC-051, ¶ 9, 144 N.M. 815, 192 P.3d 1192.

14

## C. Exclusion of Evidence of Alternate Perpetrator

{24} The district court did not allow defense counsel to question the victim regarding a restraining order the victim obtained against her now ex-husband, Martin Maes, to whom she was married when she was living with Jose. Defense counsel attempted to refer to the victim's testimony from the first trial, in which she stated Maes had entered her apartment without permission, and she had obtained a restraining order against him. Defense counsel stated that he was attempting to refresh the victim's recollection. The district court sustained the State's objection to the line of questioning, but issued a curative instruction after a bench conference, telling the jury that previously the victim had stated under oath that three weeks prior to the crime Maes had entered her apartment without permission. Defense counsel conceded that "[a] curative instruction sounds fine with me" because all she was trying to do was refresh the victim's memory.

{25} "A defendant seeking relief because an avenue for his defense was foreclosed by an evidentiary ruling must show that he was prejudiced by the ruling. However, no more prejudice need be shown than that the [district] court's order may have made a potential avenue of defense unavailable to the defendant." *State v. Campbell*, 2007-NMCA-051, ¶ 14, 141 N.M. 543, 157 P.3d 722 (alteration, internal quotation marks, and citations omitted). In *Campbell*, we reversed a district court's decision to exclude

expert testimony on reliability of child allegations of sexual abuse because we determined it impaired the defendant's ability to question the veracity of his accuser and, in that case, there was no other evidence offered on that theory of defense. *Id.* *¶¶* 1, 17.

{26}    In the case at hand, Defendant had the opportunity to introduce evidence of an alternative perpetrator of the crimes of which she was accused. The district court issued an instruction to the jury, stating that the victim had previously testified that her ex-husband had entered her home without permission. Defense counsel was permitted to question her about a fight between the victim's ex-husband and current husband. Defendant argues on appeal that her ability to put on a defense was impaired because she could not introduce evidence of a temporary restraining order that the victim obtained against her ex-husband. However, during the bench conference regarding the State's objection to this line of questioning, defense counsel stated that he was "not going to get into an argument about the restraining order" and later stated that the court's instruction "sounds fine with me[, t]hat's all I was trying to do." Because Defendant was able to introduce other evidence regarding an alternate perpetrator and did not desire to pursue the introduction of the restraining order at trial, we conclude that she was not prejudiced by the court's evidentiary rulings in this matter.

**D.    Shotgun Instruction**

{27} Defendant's final claim on appeal is that the judge gave an impermissible shotgun instruction to the jury. In this case, the jury sent the court a note that stated "we have two guilty, two undecided, [and] eight guilty. We have people who have immediate evening commitments. What do you want us to do?" The court determined that the jury would recess for the evening, but be instructed to return in the morning because the court thought that it was not a situation where he may be giving a shotgun instruction because "it's obvious that they would like to continue to deliberate." Defendant neither objected to nor indicated that the district court was misinterpreting the note from the jury regarding a desire to recess deliberations for the evening and continue the next day. Because the issue was not preserved, we review for fundamental error.

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive.

*State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

{28} A shotgun instruction is one in which the court, upon hearing the numerical breakdown of an undecided jury that also appears to be deadlocked or unable to arrive at a verdict, "instructs the jury that it *must* deliberate further[.]" *State v. Juan*, 2010-NMSC-041, ¶ 17, 148 N.M. 747, 242 P.3d 314. However, "the [district] court is

permitted to inform the jury that it *may* consider further deliberations[.]" *Id.* (internal quotation marks and citation omitted). We have stated that, if the "instruction in question tended to coerce and unduly hasten the jury's consideration of the case," we may reverse if the error was properly preserved, but that even a coercive instruction was not enough to rise to the standard required to show fundamental error. *State v. Travis*, 1968-NMCA-036, ¶ 8, 79 N.M. 307, 442 P.2d 797. Here, we note that the instruction given was not clearly coercive. Because an unpreserved shotgun instruction cannot constitute fundamental error, we do not need to analyze the issue further.

## III. CONCLUSION

{29} We conclude that because Defendant did not demonstrate particularized prejudice resulting from the delay of her trial, and the State was only responsible for less than six months of the delay, her right to a speedy trial was not violated. Because Defendant did not preserve her evidentiary claims and an unpreserved claim of a shotgun instruction can never constitute fundamental error, we affirm the district court.

{30}    **IT IS SO ORDERED.**


_____

**RODERICK T. KENNEDY, Chief Judge**


**WE CONCUR:**


_____

**JONATHAN B. SUTIN, Judge**


_____

**TIMOTHY L. GARCIA, Judge**