**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-032**

**Filing Date:  February 18, 2015**

**Docket No. 33,349**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellant,**

**v.**

**NODEE LUJAN,**

        **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Louis E. DePauli Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**      Defendant Nodee Lujan was charged with two counts of criminal sexual contact of a minor in the fourth degree. *See* NMSA 1978, § 30-9-13(A),(D)(1) (2004). The State appeals the district court's order that dismissed Defendant's charges based upon a violation of Defendant's right to a speedy trial under the United States and New Mexico Constitutions. We affirm.

1

**BACKGROUND**

**{2}** On March 16, 2012, the State arrested and filed a criminal complaint against Defendant for two counts of criminal sexual contact of a minor in the fourth degree. Defendant was released on March 22, 2012, and his trial was set for October 16, 2012.

**{3}** On August 16, 2012, Defendant notified the State that he took and passed a polygraph test and that he intended to use the test results at trial. On September 24, 2012, the State filed a motion to compel Defendant to take another polygraph examination, which the district court denied. On October 4, 2012, twelve days before the trial was to begin, the State notified Defendant's counsel that the victim had also taken and passed a polygraph test. Defendant objected to the State's motion to admit the results of the victim's polygraph examination on the basis of late disclosure. *See* Rule 11-707(D) NMRA ("A party who wishes to use polygraph evidence at trial must provide written notice no less than thirty (30) days before trial or within such other time as the district court may direct."). The State moved to continue the trial. The district court denied the State's continuance motion, and it scheduled a hearing to resolve the State's motion to admit the victim's polygraph results for the day of trial.

**{4}** On October 15, 2012, the day before the trial was to begin, the State dismissed the charges against Defendant. It refiled identical charges eight days later. Defendant pleaded not guilty to the refiled charges at his May 2013 arraignment. Trial on the refiled charges was set for October 15, 2013, one year after his first trial had been scheduled to begin.

**{5}** On July 11, 2013, five months before trial, Defendant moved to dismiss the charges against him on speedy trial grounds. After holding an evidentiary hearing on the motion on October 8, 2013, the district court granted the motion and dismissed the case.

**{6}** On appeal, the State concedes that the delay presumptively prejudiced Defendant and that "the reasons for the delay should be attributed to the State." However, it argues that the district court should not have weighed the delay heavily against the State "because Defendant caused some of the delay and much of the delay was beyond the control of either party." The State also contends that Defendant did not assert his speedy trial right and that any prejudice he suffered was not "undue."

**DISCUSSION**

**A.    General Principles and Standard of Review**

**{7}** The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. The New Mexico Constitution affords a similar right: "In all criminal prosecutions, the accused shall have the right to . . . a speedy public trial." N.M. Const. art. II, § 14. "Though speed is an important attribute of the right," the right "does not preclude

2

the rights of public justice"—"if either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed." *State v. Garza*, 2009-NMSC-038, ¶ 11, 146 N.M. 499, 212 P.3d 387 (alteration, internal quotations marks, and citations omitted). We therefore analyze "the peculiar facts and circumstances of each case." *Id.*

**{8}** In determining whether a defendant's speedy trial right was denied, our Supreme Court has adopted the balancing test that the United States Supreme Court created in *Barker v. Wingo*, 407 U.S. 514 (1972). *Garza*, 2009-NMSC-038, ¶¶ 9, 13. Under the *Barker* framework, we weigh "the conduct of both the prosecution and the defendant" under the guidance of four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the timeliness and manner in which the defendant asserted his speedy trial right, and (4) the particular prejudice that the defendant actually suffered. *Garza*, 2009-NMSC-038, ¶¶ 13, 32, 35. "Each of these factors is weighed either in favor of or against the State or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. Because none of these factors is "talismanic[,]" we analyze speedy trial claims on a case-by-case basis. *State v. Palacio*, 2009-NMCA-074, ¶ 9, 146 N.M. 594, 212 P.3d 1148.

**{9}** Before applying the balancing test, we first assess whether the length of the delay was "presumptively prejudicial," depending on the complexity of the case. *See Spearman*, 2012-NMSC-023, ¶ 21; *see also Garza*, 2009-NMSC-038, ¶ 21 ("[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors."). "A delay of trial of one year is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases." *Spearman*, 2012-NMSC-023, ¶ 21. The State concedes that the length of the delay was presumptively prejudicial. We agree with the State's concession. *See State v. Urban*, 2004-NMSC-007, ¶ 13, 135 N.M. 279, 87 P.3d 1061 (agreeing with the state's concession that a sufficient lapse of time is presumptively prejudicial). We therefore proceed to inquire further into the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 21.

**{10}** Although we defer to the district court's factual findings concerning each factor, we independently review the record to determine whether a defendant was denied his speedy trial right, and we weigh and balance the *Barker* factors de novo. *Spearman*, 2012-NMSC-023, ¶ 19; *Palacio*, 2009-NMCA-074, ¶ 9; *see also State v. Collier*, 2013-NMSC-015, ¶ 41, 301 P.3d 370 (stating that the *Barker* factors are "factually based").

**B.     Discussion and Weighing of the Factors**

**1.     Length of Delay**

**{11}** In determining what weight to give the length of any delay, we consider the extent to which the delay stretched beyond the presumptively prejudicial period. *State v. Ochoa*, 2014-NMCA-065, ¶ 6, 327 P.3d 1102, *cert. granted*, 2014-NMCERT-006, 328 P.3d 1188. "[T]he greater the delay[,] the more heavily it will potentially weigh against the [s]tate."

*Garza*, 2009-NMSC-038, ¶ 24. A delay that "scarcely crosses the bare minimum needed to trigger judicial examination of the claim" will "not weigh heavily in [a d]efendant's favor." *Id.* ¶¶ 23-24 (internal quotation marks and citation omitted); *compare State v. Steinmetz*, 2014-NMCA-070, ¶ 6, 327 P.3d 1145 (concluding that a delay of twenty-eight months beyond the presumptive threshold weighed "moderately" against the State in a case of intermediate complexity), *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188, *with Urban*, 2004-NMSC-007, ¶ 20, (concluding that an eighteen-month delay beyond the presumptive threshold weighed heavily against the State in a simple case); *State v. Marquez*, 2001-NMCA-062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (concluding that a nine-month delay beyond the presumptive threshold weighed heavily against the State in a simple case), *and State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (concluding that a six-month delay beyond the presumptive threshold weighed slightly against the State in a case of intermediate complexity).

**{12}**   The district court found that this was a simple case, because "[t]he only contested issue . . . is the credibility of the witnesses[,]" and "the issues regarding the competing polygraph test results [would] have been resolved pretrial[.]" The State disagrees. It argues that the case was "more complicated" because it "involved minor children" and the results of Defendant's and the victim's polygraph tests "were at odds with each other." We defer to the district court's finding that this was a simple case because it was in the best position to make that determination. *See State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477; *State v. Johnson*, 2007-NMCA-107, ¶ 7, 142 N.M. 377, 165 P.3d 1153.

**{13}**   The State and Defendant disagree on how we should calculate the length of time that Defendant's trial was delayed. Both agree that Defendant's speedy trial right accrued on March 16, 2012—the day that the State filed its first criminal complaint and arrested him. However, the State argues that the delay should be calculated at sixteen months because we should stop counting the delay on the date that Defendant filed his motion to dismiss. Defendant argues that the delay was nineteen months because we should stop counting the delay on the date that the charges were dismissed. We generally agree with Defendant. Under these circumstances, where Defendant's trial was set for October 15, 2013, the district court heard Defendant's motion to dismiss on October 8, 2013, and the order dismissing the charges was entered on October 30, 2013, we conclude that the calculation of the delay extends to either the date that the charges were dismissed or the date the trial was scheduled to begin. *See Marquez*, 2001-NMCA-062, ¶ 11 (concluding that the length of delay includes the entire time during which criminal charges were pending against the defendant); *see also Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and *trial* has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay[.]" (Emphasis added)). We therefore conclude that the length of the delay was at least nineteen months—March 16, 2012 (the date of arrest and filing of charges) to October 15, 2013 (the trial setting).

**{14}**   A nineteen-month delay extends seven months beyond the twelve-month presumptive threshold for simple cases. *See Spearman*, 2012-NMSC-023, ¶ 21. This delay weighs in

4

Defendant's favor at least slightly. *See Id.* ¶ 24 (noting that even though a one-to-four-month delay beyond the presumptive minimum does weigh against the state, it will not weigh heavily against the state); *State v. Moreno*, 2010-NMCA-044, ¶ 38, 148 N.M. 253, 233 P.3d 782 (concluding that, in a complex case, a seven-month delay beyond the presumptive threshold "weigh[ed] against the state and in [the d]efendant's favor[,]" but the Court did not say how heavily); *Marquez*, 2001-NMCA-062, ¶¶ 10, 12 (concluding that, in a simple case, a nine-month delay beyond the presumptive threshold weighed heavily against the state, and that even if the delay was seven months beyond the presumptive period as the state argued, the delay was "significantly well beyond" the threshold); *Montoya*, 2011-NMCA-074, ¶¶ 16-17 (concluding that, in a case of intermediate complexity, a six-month delay beyond the presumptive threshold weighed slightly against the state).

### 2.     Reasons for Delay

**{15}**     We assign different weight to different types of delay. *See Spearman*, 2012-NMSC-023, ¶ 25. There are three types: "(1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason." *Ochoa*, 2014-NMCA-065, ¶ 8. "Deliberate delay is to be weighted heavily against the government." *Id.* ¶ 9 (internal quotations marks and citation omitted). Negligent or administrative delay weighs against the State, though not heavily. *Spearman*, 2012-NMSC-023, ¶ 25. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (internal quotation marks and citations omitted).

**{16}**     The district court found that

> [t]he State dismissed the case due to the rulings by the trial court to not continue the trial, to not compel . . . Defendant to take a second polygraph test[,] and the adverse position the State was in because of its late filed motions. These reasons are not valid reasons to dismiss a case. The State should have taken the case to trial in the posture it was in.

These circumstances may be viewed adversely against the State. *See Garza*, 2009-NMSC-038, ¶ 25 (stressing the point that "official bad faith in causing delay will be weighed heavily against the government" (internal quotation marks and citation omitted)). The district court also found that the other delays the State asserts were caused by Defendant and the district court were "foreseeable, if not inherent, and in any event could have been avoided had the case gone to trial as originally scheduled." The court did not enter any findings about the State's bare assertion that it needed more time for discovery in the first case due to Defendant's submission of an untimely witness list. We are unable to evaluate this claim because we do not have the record of the first case before us, and the State does not explain why it needed more time for discovery. *See Romero v. U.S. Life Ins. Co. of Dallas*, 1986-NMCA-044, ¶ 12, 104 N.M. 241, 719 P.2d 819 (stating that, without the record of facts from a related case, part of which apparently formed the basis for the district court's decision, "no question is presented to this [C]ourt for review"); *State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146

5

N.M. 873, 215 P.3d 811 (declining to review an undeveloped argument on appeal). Thus, we defer to the district court's factual determinations and findings, *Spearman*, 2012-NMSC-023, ¶¶ 19, 30, and conclude that the primary reason for the delay weighs heavily against the State because it was deliberate. *See Ochoa*, 2014-NMCA-065, ¶ 9.

### 3.	Assertion of the Right

**{17}**	A defendant's failure to demand a speedy trial does not "forever waive[] his right[]" because this right is "fundamental in nature." *Garza*, 2009-NMSC-038, ¶¶ 31-32 (internal quotation marks and citation omitted). In determining the weight to assign to a defendant's assertion of his speedy trial right, we "assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* ¶ 32. We consider "whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Id.* The effect of a defendant's assertion of his speedy trial right may be mitigated where his actions resulted in delay. *Id.*

**{18}**	The district court found that Defendant had not formally asserted his speedy trial right until he filed his motion to dismiss in July 2013. It weighed this factor slightly against the State, because it found that Defendant had not acquiesced to the delay. The State, citing a Fifth Circuit Court of Appeals case, argues that Defendant's filing of a motion to dismiss should be weighed "strongly" against Defendant because it was "an assertion of the remedy" and not an assertion of the right. *See United States v. Frye*, 489 F.3d 201, 210-12 (5th Cir. 2007) (concluding that the assertion-of-the-right factor did not "weigh against the government" because the defendant's motions for dismissal amounted to an assertion of the remedy rather than an assertion of his speedy trial right and because the motions did not manifest a "desire to be tried promptly"). New Mexico courts, however, have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the government, although it is generally not weighed heavily. *See, e.g.*, *Work v. State*, 1990-NMSC-085, ¶ 7, 111 N.M. 145, 803 P.2d 234 (agreeing with the Court of Appeals that the defendant timely asserted his right to a speedy trial and "weigh[ing] this factor in his favor" where the defendant filed a speedy trial motion seven months after the indictment and five weeks before trial was scheduled to begin); *State v. Johnson*, 1991-NMCA-134, ¶ 5, 113 N.M. 192, 824 P.2d 332 (concluding that the "[d]efendant asserted his right to a speedy trial by filing a motion to dismiss for delay" and that "[t]his factor . . . weighed in favor of [the] defendant, but not heavily").

**{19}**	Here, Defendant asserted his speedy trial right by filing his motion to dismiss about nine months after the State refiled the charges against him and about five months before he was scheduled to go to trial. He filed his motion well before trial was set to begin, not "on appeal as [an] afterthought[,]" and he did not otherwise act in a manner that caused delay. *See Garza*, 2009-NMSC-038, ¶ 32. Therefore, we conclude that his motion amounted to an appropriate assertion of the right and the district court properly weighed the assertion factor slightly against the State. *See  Work*, 1990-NMSC-085, ¶ 7; *Johnson*, 1991-NMCA-134, ¶ 5.

## 4. Prejudice

**{20}** The "heart" of the speedy trial right "is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. We analyze prejudice against a defendant under three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Id.* ¶ 35. We are mindful that "some degree of . . . anxiety is inherent for every defendant . . . awaiting trial." *State v. Maddox*, 2008-NMSC-062, ¶ 33, 145 N.M. 242, 195 P.3d 1254 (alterations, internal quotations marks, and citation omitted), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. "Therefore, we weigh this factor in the defendant's favor only where . . . the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35. A defendant is not required to show that he experienced "greater anxiety and concern than that attending most criminal prosecutions." *Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562, *holding modified on other grounds by Garza*, 2009-NMSC-038, ¶ 22. "The operative question is whether the anxiety and concern, once proved, has continued for an unacceptably long period." *Id.* "It is for the court to determine whether the emotional trauma suffered by the accused is substantial and to incorporate that factor into the balancing calculus." *Id.* The evidence must also establish that the alleged prejudice occurred as a result of the delay in trial beyond the presumptively prejudicial threshold as opposed to the earlier prejudice arising from the original indictment. *See Spearman*, 2012-NMSC-023, ¶ 39.

**{21}** The district court found that Defendant suffered prejudice because he "lived under a cloud of anxiety, suspicion[,] and hostility from the beginning of the case up to the date of the hearing [on his motion to dismiss]"; "[a]fter the case was dismissed and refil[]ed, . . . Defendant's girlfriend ended her long[-]term relationship with . . . Defendant because he had become unbearable to live with[]"; and "Defendant testified [that] he became unbearable mainly due to the continued stress of the criminal proceedings against him."

**{22}** Defendant testified that at the time he was arrested, he had been serving on the Gallup Fire Department for twenty years and had risen to the level of Lieutenant. As part of his duties he was a CPR instructor; taught at the fire academy and the U.S. Department of Defense; and worked with children through the Police Athletic League, the Boys and Girls Club, and in local schools teaching fire prevention. He testified that after he was arrested in March 2012, Albuquerque and Gallup newspapers published articles about the allegations against him, and his supervisor told a news reporter during a television interview that Defendant was "a black eye to the . . . department." Defendant was demoted to general "firefighter" status, resulting in a dramatic decrease in pay, and he was stripped of all of his supervisory and teaching duties. He testified that his department restricted him from having any contact with females, regardless of their age, even to the extent that he was not permitted to perform CPR on females during emergency medical calls. His supervisors began writing him up for numerous minor infractions and indirectly suggested that he retire to "save [his] retirement" before he was fired. As a result, Defendant retired early, causing him to receive a lower pension than he would have received had he retired a few years later, as he had previously intended.

7

**{23}**     Defendant testified that he and his girlfriend of seven years and her children—his "family"—were ostracized at work and in the community and that most of his friends who had children stopped communicating with him. After the State refiled the charges against him in October 2012, Defendant's family left him and moved to Silver City. He later tried to reconcile his relationship with his family, and he moved to Silver City to be closer to them. However, he could not secure employment in Silver City due to the pending charges. His family left him a second time due to his inability to find work and the stress of "being charged again." He testified that between the time of his arrest and the time of the hearing on his motion to dismiss, his weight dropped from 280 pounds to 189 pounds and that this nearly 100-pound weight loss was due to stress and not being able to eat or sleep.

**{24}**     The State did not present any evidence to show that Defendant had not suffered these forms of prejudice, other than confirming that his retirement was "voluntary," that Defendant had been arrested once before in 2008 for domestic battery, and that one of the reasons that his family left him was because of his behavior in response to his stress around the pending charges.

**{25}**     We defer to the district court's factual findings regarding whether Defendant suffered prejudice from the delay, *see Spearman*, 2012-NMSC-023, ¶ 19, and we conclude that the prejudice was not only "actual" and "particularized[,]" but that it was "substantial[,]" "undue[,]" *see Garza*, 2009-NMSC-038, ¶¶ 13, 35, and it "continued for an unacceptably long period[,]" *see Salandre*, 1991-NMSC-016, ¶ 32. Although some of the harm occurred while the first case was pending, it continued and was unnecessarily prolonged seven to twelve months by the State's deliberate delay when it dismissed and refiled the case. Defendant suffered additional prejudice after the charges were refiled: his family left him—twice, and he was unable to secure a job. The personal hardship and anxiety-type of prejudice to be protected against is separate and distinct from the loss of liberty caused by incarceration or the possible prejudice to an accused's defense. *See Spearman*, 2012-NMSC-023, ¶ 37; *see also Salandre*, 1991-NMSC-016, ¶ 18 (stating that the speedy trial right "protects against interference with a defendant's liberty, disruption of employment, curtailment of associations, subjection to obloquy, and creation of undue anxiety"); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 56, 327 P.3d 1129 (stating that "anxiety, loss of employment, continued inability to find work, and . . . public humiliation" suffered by the defendant "are forms of prejudice that the speedy trial right is intended to curtail").

**{26}**     Thus, the evidence presented to the district court identified the types of serious disruptions and other severe hardships that can be weighed heavily in Defendant's favor. We will not substitute the State's view of the severity of Defendant's personal hardships and anxiety level for that of the district court. *See Spearman*, 2012-NMSC-023, ¶ 19. Taking into account the additional delay arising from the State's intentional dismissal and refiling of the charges to avoid the October 2012 trial setting, the overall anxiety and personal hardship suffered by Defendant in this case was much more severe. *See Garza*, 2009-NMSC-038, ¶ 25 ("The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." (internal quotation marks and citation

omitted)). Under these circumstances, we agree with the district court that the prejudice factor weighed heavily in Defendant's favor.

## C.  Balancing the Factors

**{27}**  The length of delay weighs at least slightly or even more heavily in Defendant's favor. The assertion of the right is weighed slightly in favor of Defendant. The reasons for the delay and the undue prejudice suffered weigh heavily in Defendant's favor. None of these *Barker* factors weigh in the State's favor. Therefore, on balance, we conclude that the *Barker* factors weigh sufficiently in Defendant's favor and the district court appropriately dismissed Defendant's charges on speedy trial grounds. *See Spearman*, 2012-NMSC-023, ¶ 17.

## CONCLUSION

**{28}**  We affirm the district court's order dismissing this case with prejudice.

**{29}  IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

9